**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KARTARIK, Inc., Respondent.**

No. 14958.

United States Court of Appeals
Eighth Circuit.

Nov. 22, 1955.

Norton J. Come, Atty., National Labor Relations Board, Washington, D. C. (Theophil C. Kammholz, Gen. Counsel, Chicago, Ill., David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frederick U. Reel and William J. Avrutis, Attys., National Labor Relations Board, Washington, D. C., with him on the brief), for petitioner.

Harold Shear, St. Paul, Minn., for respondent.

Before JOHNSEN, COLLET and VAN OOSTERHOUT, Circuit Judges.

JOHNSEN, Circuit Judge.

A consent decree has previously been entered by us, 8 Cir., 209 F.2d 956, granting enforcement of an order issued by the National Labor Relations Board against respondent, 103 N.L.R.B. No. 64. One of the prescriptions of that order was that respondent should make whole three named employees for such loss of pay or earnings as they had sustained from respondent's unlawful discharge of them.

Following the entry of the consent decree, the Board engaged in a further hearing to determine the amount of the back-pay owing to each employee and issued a supplemental order directing respondent to pay the amounts which it so found to be due. The matter is now before us on a motion by the Board for a supplemental decree of enforcement as to this order. Cf. N. L. R. B. v. Bird Mach. Co., 1 Cir., 174 F.2d 404, 407, footnote.

Respondent resists the granting of the motion, upon the grounds, in substance, (1) that the Board has, since the issuance of its original order and the entry of our enforcement decree, changed its jurisdictional standards,[1] so that the plant of respondent no longer comes within the dollar volume of interstate business required to bring an employer's operations under the Board's cognizance, and the Board thus has precluded itself from exercising further jurisdiction in the situation; and (2) that, in any event, the determinations of back-pay made by the Board were clearly erroneous, because they were predicated upon the unwarranted assumption that the three employees would have received the same amounts of wages as respondent had paid to other comparable employees during the period involved, when the facts were that respondent's business had at the time materially declined in volume; that respondent had not hired any replacements for the three employees discharged; that respondent had no established seniority system or business practice from which it reasonably could be concluded that it would have laid off some of its later-hired employees, in favor of the three employees involved, if they had not been wrongfully discharged; and that respondent therefore could (and was as much entitled to have it assumed that it would so have done as otherwise) have prorated the available work and pay among all of its 12 employees (inclusive of the 3 discharged), with the result that the discharged employees should have been allowed, not the amount found by the Board to be due them, but merely their proportional share of the total wages which respondent actually had paid.

The first of respondent's contentions, set out above, is grounded upon the holding of this Court, in N. L. R. B. v. National Gas Co., 8 Cir., 215 F.2d 160, 162, 163, involving a similar situation, that, from the accompanying declaration which the Board had made in the adoption of its changed jurisdictional standards, that "The new standards will be applied to pending cases as well as those filed hereafter", it appeared to the Court that the Board itself had "denied its ju-

---

[1] Among the changes which the Board made in its jurisdictional standards were an increasing of the required amount of direct outflow of interstate business from $25,000 to $50,000 a year, and an increasing of the required amount of indirect inflow of interstate goods from $50,000 to 100,000 a year. The standards will be found set out in Jonesboro Grain Drying Cooperative, 110 N.L.R.B.No. 67.

risdiction [for all purposes, including the enforcement of a previous order] over respondent and other employers similarly situated" and that the attempt made to enforce its previous order was therefore entitled to be regarded as "an arbitrary and capricious discrimination against respondent".

Within a short time thereafter, however, the Board, in Edwin D. Wemyss, 110 N.L.R.B. No. 134, at page 843, made it clear that the National Gas Co. case had not correctly interpreted its intended policy in the adoption of its changed standards and the accompanying declaration made of their application to pending cases, by stating: "The present Board had no thought, indeed no basis, for overruling prior Board decisions correctly made under jurisdictional criteria in effect at the time of determination. * * * Accordingly it was, and is, Board policy for the future, to proceed as follows: The Board will apply the recently announced jurisdictional standards to all future and to all pending complaint cases which have not yet resulted in the issuance of a decision and order either finding unfair labor practices or dismissing the complaint. As to all other complaint cases in which a decision and order has already issued, the Board will proceed with compliance, enforcement and contempt proceedings, depending upon the status of the case, without regard to whether the particular case meets the revised jurisdictional standards."

█ This definitive expression of the Board's policy was made prior to the issuance of its supplemental decision and order in the present case. On what the Board has thus said and done, there can be no possible justification or basis for us to give the National Gas Co. case any application here. That the Board is entitled to make any change in its jurisdic-

tional standards or other policies, such as it has the right to prescribe under the Act, have application only to cases which it has not already decided and not to those in which it has previously issued a decision and order, we think that there can be no room generally to doubt. See N. L. R. B. v. Stanislaus Implement & Hardware Co., 9 Cir., 226 F.2d 377; N. L. R. B. v. Armco Drainage & Metal Products, Inc., 6 Cir., 220 F.2d 573, 584; N. L. R. B. v. Red Rock Co., 5 Cir., 187 F.2d 76, 78.[2]

The explanation which the Board added in the Wemyss case, supra, of the reason for its position is sufficiently demonstrative and convincing of the relationship which its restriction of the application of the new jurisdictional standards has to an effectuation of the purposes of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. It said: "But once a final determination has been made by the Board after a hearing under Section 10(c) that illegal conduct occurred, a proper respect for the operation of law and of the decision of quasi-judicial agencies seems to us to require that those Board decisions and orders be honored by compliance or enforced whenever necessary."

█ On respondent's second contention, as set out above, that the determinations of back-pay made by the Board were clearly erroneous as having been speculatively arrived at in their amounts, we think that, at the least, such determinations on the part of the Board may not judicially be required to rest upon any greater degree of certainty as to amount than that applicable to contract or statutory breaches generally. Cf. F. W. Woolworth Co. v. N. L. R. B., 2 Cir., 121 F.2d 658, 663.

█ That degree of certainty may appropriately be recalled. "There is a clear

2. In this connection, there also may be noted the observation made by the Supreme Court, in affirming the enforcement granted of a bargaining order of the Board, in Brooks v. N. L. R. B., 348 U.S. 96, 104, footnote 16, 75 S.Ct. 176, 181, 99 L.Ed. 125, that the Board had, subsequent to the decision and order involved, "applied new jurisdictional yardsticks which would place the case, if now brought, outside them."

distinction between the measure of proof necessary to establish the fact that [a party] sustained some damage and the measure of proof necessary to enable [a tribunal] to fix the amount." Story Parchment Paper Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544. "Certainty in the fact of damage is essential. Certainty as to the amount goes no further than to require a basis for a reasoned conclusion." Palmer v. Connecticut Ry. & Lighting Co., 311 U.S. 544, 561, 61 S. Ct. 379, 385, 85 L.Ed. 336. These principles are, of course, intended to permit a solution of the problem of amount to be made upon any range of facts, circumstances or reasonable inferences, which afford a rational basis for a conclusion.

That the three employees had in fact suffered a loss in wages or earnings from their wrongful discharge is not here disputed. The only question is whether the Board fairly could arrive at the amount of the loss on the basis of the earnings of other comparable employees in the plant during the period involved, or whether it was required to do so solely on the basis of respondent's contention that, in view of the decline in its business, the three employees had been deprived merely of their proportional share of the total wages which respondent had paid to all its comparable employees, on the theory that, if the three employees had been permitted to remain, respondent would not have laid off any of its other employees but would have divided the available work equally among them all.

The Board pointed out that there was no evidence that respondent "had a practice of sharing the work in this fashion." As a matter of fact, respondent's president testified on cross-examination that, while he tried in general to keep all of his employees from having to lose any time, he had on occasion, when there was no work in the plant for a particular employee to do, sent such an employee home. Again, while respondent was not shown to have had an established seniority system, it did, as the Board found, "recognize service with the Company in its vacation policy."

On these and other elements in the record, we think that there was a sufficient rational basis for the Board to conclude, for purposes of remedially arriving at the amount of wages which the three employees had lost, that, if respondent's business had so declined that it was in need of the services of only 9 instead of 12 employees, it would not reasonably, during the approximately one-year's period that is here involved, have continued to carry all of such 12 employees on its pay roll, but would more naturally, just as it apparently undertook to do through its discriminatory discharges, have reduced its force, and that, absent the existence of some established policy or other demonstrated and convincing circumstance, it would in reasonable probability, on the basis of normal industrial practice generally, have made such lay-offs in relation to the employees' service dates. None of the three employees would have been among those so laid off.

A decree will be entered enforcing the Board's supplemental order.