**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MIAMI COCA–COLA BOTTLING COMPANY, Respondent.**

No. 20288.

United States Court of Appeals
Fifth Circuit.

May 10, 1966.

Rehearing Denied Aug. 11, 1966.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Paul J. Spielberg, Bernard M. Dworski, Attys., N. L. R. B., Washington, D. C., for petitioner.

O. R. T. Bowden, David A. Bartholf, Jacksonville, Fla., for respondent.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and FISHER, District Judge.

WISDOM, Circuit Judge.

In 1962 the National Labor Relations Board found that Miami Coca-Cola Bottling Co. had unlawfully discharged employees Coughlin, Shepard, Elgie, and Gonzales because of their union activities. The Board ordered the company to make whole the employees for loss of pay caused by their unlawful discharge. 138 NLRB 1209 (1962). This Court

enforced, per curiam, the order of the Board. NLRB v. Miami Coca-Cola Bottling Co., 5 Cir. 1963, 324 F.2d 501. The parties were unable to agree on the backpay. The Board therefore reopened hearings, June 15–16 and August 5, 1964. The Board adopted the examiner's determinations except that it reduced Shepard's backpay award to $1,842.70 and Gonzales' interest award to $240. Miami Coco-Cola Bottling Co., 150 NLRB (No. 160) (1965), 1965 CCH NLRB ¶ 9266.

Coca-Cola has paid the backpay awards to Elgie and Gonzales. On seven counts, Coca-Cola objects to the Board's order determining backpay due Shepard and Coughlin:

(1) Should Coca-Cola's annual $100 safety award be included in Shepard's backpay in view of the fact that his unlawful discharge before the end of the year 1961 makes it impossible to determine whether he would have earned the award?

(2) Was the $142.16 Coughlin earned driving taxicabs "supplemental income" not to be included in his gross interim earnings?

(3) Did Coughlin make timely acceptance of the offer of reinstatement?

(4) Should the hiring hall registration fees Coughlin paid seeking new employment be deducted from his gross interim earnings?

(5) Is there substantial evidence in the record to support the Board's conclusion that Coughlin and Shepard made reasonable efforts to obtain interim employment?

(6) Was it an abuse of the examiner's discretion to deny the respondent's motion for continuance of the hearing?

(7) Was it an abuse of the examiner's discretion to prohibit the employer's attempt to cross-examine Shepard about his other sources of income during the backpay period?

On the first six issues, we find in favor of the Board. To that extent we enforce its supplemental order. As to the seventh issue, we agree with Coca-Cola. To obtain a full and true disclosure of the facts, the examiner should have permitted the employer to cross-examine Shepard. We remand the case to permit the respondent that opportunity.

## I.

### Shepard's $100 Safety Award

■ Had Shepard completed 1961 without an accident, he would have earned Coca-Cola's annual driver's safety award of $100. Shepard was accident-free at the time of his unlawful discharge October 5, 1961. Since Shepard's discharge made it impossible to determine whether he would have completed the year accident-free, the Board resolved the uncertainty against the wrongdoer, the respondent, and included the full $100 in Shepard's backpay. We agree with the Board.

■ A safe-driving award which an employee would have earned absent unlawful discrimination is includible in backpay. See NLRB v. Exchange Parts Co., 5 Cir. 1965, 339 F.2d 829, 831, 832; Nabors v. NLRB, 5 Cir. 1963, 323 F.2d 686, 690. Ordinarily the general counsel must prove with certainty that the employer's unlawful discrimination caused the employee's loss of backpay. NLRB v. Katarik, Inc., 8 Cir. 1955, 227 F.2d 190, 192; Mastro Plastics, 136 NLRB 1342, 1346 (1962). Here however that burden is impossible to carry. Failure to qualify for the $100 award might have resulted either from the unlawful discharge or from Shepard's having an accident during October, November, or December, 1961.

■ The respondent argues that the general counsel's inability to carry the burden of proof decides the issue. But the Board has, as a matter of policy—one that seems reasonable—consistently taken the view that when an employer's unlawful discrimination makes it impossible to determine whether a discharged employee would have earned backpay in

the absence of discrimination, the uncertainty should be resolved against the employer. Merchandise Press, Inc., 115 NLRB 1441, 1332 (1956); Spitzer Motor Sales, 102 NLRB 437, 453 n. 52 (1953).

This Court has approved the Board's rule. East Texas Steel Castings Co., 116 NLRB 1336, 1339–40 (1956), aff'd, NLRB v. East Texas Steel Castings Co., 5 Cir. 1958, 255 F.2d 284 (per curiam). In *East Texas* unlawfully discharged backpay claimants were members of a union which struck employer February 19, 1952. The employer later offered the discharged employees reinstatement. In proceedings to determine the backpay due employees, the employer argued that the date of the strike should be the cut-off date for his backpay liability since the claimants would probably have struck with their union. Instead, the Board placed the cut-off date at the time of the offer of reinstatement because the employer's discrimination made it impossible to determine whether the backpay claimants would have gone on strike absent the discrimination.

We enforce the part of the Board's order which includes in Shepard's backpay the $100 safety award.

## II.

### Coughlin's Taxicab Earnings

█ If an unlawfully discharged employee finds interim work, his earnings are deducted from gross backpay due. But the rule requiring deduction of interim earnings applies only to earnings during the hours when the employee would have been employed by the employer in question. Phelps Dodge Corp. v. NLRB, 1941, 313 U.S. 177, 198 & n. 7, 61 S.Ct. 845, 85 L.Ed. 1271, citing Pusey Maynes & Breish Co., 1 NLRB 482, 486 (1936). Thus, the Board has held that if, during the backpay period, a discriminatee maintains a full-time job and supplements his income by casual, part-time employment, his supplemental earnings are not deductible from gross backpay. Belle Steel Company, Inc., 135 NLRB 1378, 1380 (1962); Acme Mat-

tress Co., 98 NLRB 1439; Link Belt Co., 12 NLRB 845, 872.

Coughlin was discharged March 1, 1961. The Miami Teamsters hired him as an organizer in July 1961 at $75 per week. The trial examiner credited Coughlin's testimony that he was "putting in an average of 40 hours a week with the Teamsters" during the two quarters of the backpay period in question (1961–4 and 1962–1). During the same period Coughlin worked at various hours between 5 p. m. and 4 a. m. as a taxicab driver. He admits to having earned from this "moonlighting" $142.16 over a six-week period, or about $22 a week. The examiner found these were "indeed supplemental earnings for employment held outside Coughlin's full working hours for the Teamsters [and] were properly * * * not deducted from gross backpay. * * *"

█ The employer makes two attacks on the Board's affirmance of the trial examiner. First, it asserts that the taxicab earnings are not "supplemental", because Coughlin's job with the Teamsters was not full-time. Coughlin did testify that he sometimes reported to work as late as 10 a. m., sometimes worked in the evening on organization campaigns, and did not work under strict supervision. Nevertheless, this testimony does not contradict Coughlin's earlier testimony that his work was full-time. Maintaining a rigid 8 a. m. to 5 p. m. schedule is not necessary to a full-time job if the employee works an average of 8 hours a day, 5 days a week.

Coca-Cola also argues that Coughlin's taxicab earnings are not "supplemental", because he did not work part-time as a taxicab driver before the discharge. The reported cases permitting non-deduction of supplemental earnings involve situations where an employee who had spare-time earnings prior to discharge from his regular job continued in the same spare-time job during his period of discharge. E. g., Belle Steel Company, Inc., supra; Acme Mattress Co., supra; Melrose Processing Co., 151 NLRB 134 (1965). Coughlin had never

driven a cab while working for Coca-Cola, but he had been "moonlighting." Before his discharge, he had worked during the football season at the Orange Bowl for Union News Co., a company operating concessions dispensing Coca-Cola. In 1958 he supplemented his earnings by working nights and weekends in the mailroom of the Miami Daily News.

■ Since Coughlin worked full-time with the Teamsters while he drove a taxicab at night, and since he had been moonlighting before his unlawful discharge, we think that the fact that he changed his spare-time employment is not enough to prohibit characterization of his taxicab earnings as supplemental.

We enforce that part of the Board's order refusing to deduct the cab earnings from gross backpay.

### III.

#### Coughlin's offer of Reinstatement

■ After this Court ordered enforcement of the Board's order requiring Coughlin's reinstatement the employer wrote Coughlin the following letter:

> In conformance with an order of the United States Circuit Court of Appeals, you are hereby offered reinstatement to your former, or substantially equivalent position which you held when discharged by Miami Coca-Cola Bottling Co.
>
> Please notify the undersigned within 10 days of your decision, in writing, to accept reinstatement with our company.
>
> In the event we have not heard from you in 10 days, we shall assume that you do not desire reinstatement.
>
> Your early advice is appreciated so that the necessary arrangements can be made.

The employer mailed the letter January 29, 1964. Coughlin received it February 1. In a letter dated and mailed February 8, which the company received February 10, Coughlin unequivocally accepted the offer of reinstatement. The employer construed the terms of its offer to require its receipt of Coughlin's acceptance within 10 days from the date of the offer, i. e., at least by February 7. Therefore, on February 19 Coca-Cola wrote Coughlin declining to reinstate him because his acceptance had arrived at the office on February 10.

The Board ruled that the offer of reinstatement was ambiguous. It found that Coughlin could reasonably have construed the offer to require acceptance *within 10 days from his receipt of it,* i. e., by February 10. Since Coughlin could comply with the offer according to his reasonable understanding of its ambiguous terms, the Board found his acceptance timely. Restatement, Contracts §§ 231, 233(b) (1932).

We agree with the Board and enforce that part of its order. Contrary to respondent's argument, this is not a case such as White Sulphur Springs Co. v. NLRB, 1963, 114 U.S.App.D.C. 409, 316 F.2d 410, 415, where the question was whether the employer held open his offer of reinstatement for an unreasonably short time.

### IV.

#### Coughlin's Hiring Hall Fees

■ Coughlin paid registration fees of $60 during three quarters of 1962 for use of National Maritime Union hiring halls. The Board approved deduction of the $60 from Coughlin's gross interim earnings as expenses incurred seeking new employment which exceeded expenses he would have incurred in employment with respondent. See 5 Williston, Contracts § 1359 (Rev. ed. 1937). We also approve the deduction.

The hiring halls assessed identical fees against union and non-union registrants. See NLRB v. Houston Maritime Association, 5 Cir. 1964, 337 F.2d 333, 336. Charges paid by union members were designated "union dues" and were equivalent to the "registration fee" which a non-union seaman would have to pay for use of the hall.

The respondent would treat Coughlin's fees as union dues non-deductible from gross interim earnings under the rule of West Texas Utilities Co., 109 NLRB 936, 938 (1954). But in *West Texas* the discharged employee voluntarily paid union dues although his interim employment was in an "open shop". The excess of the interim dues over dues he would have paid if working for his former employer was not deductible, because dues were not a *compulsory* expense of obtaining interim employment. Here, whether labeled "union dues" or "registration fees", hiring hall charges were compulsory expenses of Coughlin's interim employment. They were therefore properly deducted from his gross interim earnings.

## V.

### Reasonable efforts to obtain interim employment

In order to be entitled to backpay, an employee must at least make "reasonable efforts to find new employment which is substantially equivalent to the position from which he was discharged and is suitable to a person of his background and experience." Southern Silk Mills Inc., 116 NLRB 769, 773 (1956). See Harvest Queen Mill & Elevator Co., 90 NLRB 320, 321 (1950).

The employee's duty is based both on the doctrine of mitigation of damages and on the policy of promoting production and employment. *Southern Silk Mills,* supra at 772; Phelps Dodge Corp. v. NLRB, 1941, 313 U.S. 177, 197–200, 61 S.Ct. 845, 85 L.Ed. 1271. Since proof of damages is the general counsel's burden, the courts traditionally have left with the employer the burden of proving facts that mitigate the extent of the damages. Failure, therefore, to make a reasonable search for interim work is an affirmative defense of backpay liability; the burden of proof is the employer's. Nabors v. NLRB, 5 Cir. 1963, 323 F.2d 686, 692; see NLRB v. Mastro Plastics Corp., 2 Cir. 1965, 354 F.2d 170, 175 and cases cited in n. 5.

The trial examiner found that the employer's evidence failed to show that Coughlin and Shepard had neglected to make reasonable efforts to find interim work. The Board agreed, except that it found that Shepard had unjustifiably quit work at two different jobs and excluded from his backpay the amount he would have earned had he not quit. We enforce. Substantial evidence in the record supports the Board's findings that during the backpay period Coughlin and Shepard were working and seeking employment. Universal Camera Corp. v. NLRB, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

The Board properly rejected the argument that the discharged employees wilfully incurred losses of earnings by refusing to accept jobs at lower rates of pay. See Southern Silk Mills Inc., supra. Coughlin, who had earned $117.28 per week with Coca-Cola, indicated on employment application forms that he would accept a minimum salary of $75 to $80. He accepted employment with the Teamsters at $75 per week. Shepard, who was earning $113 at his discharge, "lowered his sights" by working in three jobs for respectively, $10 a day, $70 a week and $1.60 an hour.

In addition, the respondent argues that Coughlin and Shepard's interim earnings were "incredibly low"; suggests that this fact makes a prima facie case of their wilfully incurring losses during the backpay period; and, citing NLRB v. Pugh & Barr, 4 Cir. 1953, 207 F.2d 409, invites our adoption of a rule that the employer's proof of "incredibly low" earnings shifts to the general counsel the burden of going forward with evidence that the discriminatees used reasonable efforts to find interim work.

We decline the invitation. It is not practical, and it would significantly hamper the backpay remedy, if each discriminatee were required to prove the propriety of his efforts during the entire backpay period. See Lozano Enterprises, 152 NLRB No. 25 (May 5, 1965); Compare NLRB v. Mastro Plas-

tics Corp., supra 354 F.2d at 178. We prefer the traditional allocation, consistently approved by the courts, of assigning to the general counsel the burden of proving damages, and to the employer the burden of proving facts to mitigate the extent of those damages.

Since we have rejected the respondent's suggested broad reading of *Pugh & Barr*, that case is no obstacle to our conclusion that substantial evidence on the record as a whole supports the Board's findings. In *Pugh & Barr*, the employer showed that over a two-year backpay period the discharged employee had interim earnings of $294 while another employee of a similar grade earned $5,381.40. Nevertheless, because the employee had registered with the state employment agency, the Board found he had made a reasonable search for interim work. The Fourth Circuit Court of Appeals determined that the fact of registration alone could not support the Board's conclusion and remanded for more specific findings. The Board, supplied with additional evidence, again found that the employee, considering the circumstances, made reasonable efforts to obtain interim work. The Fourth Circuit concluded that substantial evidence on the whole record supported the conclusion. 4 Cir. 1956, 231 F.2d 558.

Similarily, in this case the trial examiner and the Board considered all the circumstances, including the availability of work, application with employment agencies, response to newspaper want ads, and the amount of interim earnings. We find that substantial evidence on the record as a whole supports the Board's conclusions regarding Coughlin and Shepard's efforts to find interim employment.

## VI.

### Denial of Motion For Continuance

■ Coughlin was at sea during the original hearing. When the hearing reopened August 5, 1964, to take his testimony, general counsel introduced an amended backpay specification. The employer announced that it was surprised at backpay claims for the first and second quarters of 1964 and moved for a two-week continuance to prepare for Coughlin's testimony. The examiner denied the motion and permitted Coughlin to testify. However, the examiner invited Coca-Cola to renew the motion during or after the hearing if "significant" or "sharply conflicting" evidence appeared. At the close of the hearing the examiner granted the employer time to conduct an investigation. Coca-Cola offered no new evidence.

The respondent's failure even to offer to introduce evidence conflicting with Coughlin's testimony undermines its objection to the examiner's denial of the continuance. If the examiner did not fully accommodate the respondent, he at least offered to "hear from" him about reopening the hearing. In these circumstances, we will not disturb the examiner's denial of respondent's motion for continuance, because it was not a "clear abuse of discretion". See NLRB v. Dal-Tex Co., 5 Cir. 1962, 310 F.2d 58, 62.

## VII.

### Prohibition of Respondent's Cross-Examination

The following colloquy occurred during the hearing as Mr. Bowden, attorney for respondent, cross-examined Shepard; the backpay claimant:

Q [By Mr. Bowden] Now, were you drawing unemployment insurance during this period of time [the backpay period]?

MR. JONES [Attorney for the General Counsel]: Objection. That question is not material.

MR. BOWDEN: I think he's got to finance himself someway and I want to know—

MR. JONES: We are not here to litigate how Mr. Shepard financed himself.

MR. BOWDEN: I am exploring to see what the sources of his income were.

MR. LIPTON [The hearing examiner]: I will sustain the objection. You are getting too far afield, Mr. Bowden.

 The Board determined that it was not an abuse of discretion for the examiner to prohibit the employer's questioning of Shepard about his other sources of income during the backpay period. We disagree. The employer had a right to cross-examine Shepard to the extent necessary to obtain a "full and true disclosure of the facts". Administrative Procedure Act, § 7(c); see also NLRB Rules and Regulations, 29 C.F.R. § 102.38 (1959).

Determination of what cross-examination is necessary is within the discretion of the hearing examiner—but his sound, judicial discretion. NLRB v. Bryan Mfg. Co., 7 Cir. 1952, 196 F.2d 477, 478. The respondent argues that the examiner's prohibition of cross-examination was only proper enforcement of the rule that cross-examination must be limited to matters testified to on the direct examination. E. g., Kincade v. Mikles, 8 Cir. 1944, 144 F.2d 784, 787; 6 Wigmore, Evidence §§ 1886–1891 (3d ed. 1940). The questions of the general counsel on direct examination probed Shepard's search for employment during the backpay period; Shepard's answers were relevant to the material issue whether he failed to make reasonable efforts to find interim employment and therefore did not deserve backpay. The employer's attempted inquiries on cross-examination concerned Shepard's sources of income during the backpay period; Shepard's answers would have been relevant to the material issue whether he had interim earnings which should be deducted from backpay. The lines of inquiry were not the same. But both sets of questions sought information about Shepard's income and employment during the backpay period. In that sense, the cross-examination was germane to the direct examination and the rule restricting the scope of cross-examination does not justify the examiner's actions.

In addition, since the employer's questions about Shepard's sources of income affected its backpay liability, the prohibition of cross-examination prejudiced presentation of its case. The examiner therefore should have permitted the cross-examination in order to obtain a "full and true disclosure of the facts." We remand to permit the employer an opportunity to probe Shepard's other sources of income during the backpay period.

The vindication of a litigant's right to a fair opportunity to present his case offsets the untidiness of the remand.

The Board order is enforced in part and reversed in part.