NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

Donald BROWNE d/b/a Bailey
Distributors, Respondent.

No. 182, Docket 89–4062.

United States Court of Appeals,
Second Circuit.

Argued Sept. 20, 1989.

Decided Nov. 28, 1989.

Richard S. Boris, New York City (Neal D. Haber, Moss & Boris, New York City, of counsel), for respondent.

Judith A. Dowd, Supervisory Atty., NLRB, Washington, D.C. (Joseph E. Desio, Acting General Counsel, Robert E. Allen, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Frederick C. Havard, NLRB, Washington, D.C., of counsel), for petitioner.

Before VAN GRAAFEILAND, MESKILL and KEARSE, Circuit Judges.

MESKILL, Circuit Judge:

This is a petition for enforcement of a supplemental order of the National Labor Relations Board ("NLRB" or "Board") pursuant to section 10(e) of the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C. § 160(e), directing Respondent Donald Browne, d/b/a Bailey Distributors ("Bailey" or "Company"), to pay discriminatee Timothy Nevins $171,912, plus interest, in back pay and to reinstate certain pension benefits.

Notwithstanding the uncontested fact that Nevins' New York State driver's license was either suspended or revoked for most of the back pay period in question, the Board based its calculation of his back pay award on a "driver's" commission rate. In resisting enforcement of the Board's order, Bailey contends that Nevins' back pay should not have been calculated at the "driver's" rate for the period of time that Nevins' was legally prohibited from serving as a driver of Bailey's delivery trucks and that Browne's April 27, 1987 offer of reinstatement tolled the Company's back pay liability.

We deny enforcement of the petition and remand for recalculation of the back pay award.

## BACKGROUND

The genesis of this proceeding is a Supplemental Decision and Order of the NLRB, dated April 14, 1987 and reported at 283 N.L.R.B. 647 (First Supplemental Order), in which Browne, as owner and operator of Bailey Distributors, was found to have discriminatorily denied Nevins employment as a "driver's helper" on January 5, 1981 in violation of sections 8(a)(1) & (3) of the NLRA, 29 U.S.C. §§ 158(a)(1) & (3).[1] The 1987 order directed Browne to offer Nevins employment "in the position for which he is qualified and in which he would have been employed but for the discrimination against him," and to fully compensate Nevins for "any loss of earnings or . . . benefits suffered as a result of the discrimination against him." *Donald Browne d/b/a Bailey Distributors*, 283 N.L.R.B. 647, 648 (1987). On August 5, 1987, we entered a consent judgment enforcing the order.

Thereafter, by letter dated April 27, 1987, Browne offered Nevins a position with Bailey as a driver's helper. In addition, pursuant to the issuance of a Backpay Specification and Notice of Hearing, a hearing to determine Bailey's back pay liability was held before an Administrative Law Judge (ALJ) on November 30 and December 1, 1987. Testimony at the hearing established that between 1977 and January 2, 1981, Nevins was employed sporadically by Bailey as a relief driver and a driver's helper. Nevins also worked briefly as a regular driver on a newly established route that was cancelled in September 1980 for economic reasons. Furthermore, on a number of occasions prior to 1981, Browne had informed Nevins that he would be given the next delivery route to become available and that Nevins should "hang in there" until one of the drivers retired. However, on January 5, 1981, following the termination of one of Bailey's regular drivers, Nevins was offered continued employment only as a driver's helper, and only on the condition that he accept forty to fifty dollars a day "off the books"—*i.e.*, in contravention of the wage and benefit provisions of the collective bargaining agreement between the Soft Drink Workers Union and the New York Pepsi–Cola Distributors Association, Inc., of which Bailey is a member.

Further testimony revealed that Nevins' driver's license had been either suspended or revoked for most of the six and one-half year back pay period in question.[2] Although Nevins testified that on January 5, 1981 he held a valid Class 1 license, which authorized operation of Bailey's large commercial delivery vehicles, *see* N.Y.Veh. & Traf.Law § 501 2(a) (McKinney Supp.1989), that license was suspended on June 16, 1982 for failure to pay certain summonses.

---

**1.** During the six year hiatus between the events that gave rise to Nevins' claim and the NLRB's First Supplemental Decision, this case came before us on a petition to review an earlier order of the NLRB dismissing Nevins' unfair labor practices complaint against Browne. *Nevins v. NLRB*, 796 F.2d 14 (2d Cir.1986). Concluding that the NLRB's standard for determining whether to defer to an arbitral decision under *Olin Corp.*, 268 N.L.R.B. 573 (1984), had not been satisfied, we vacated the order and remanded the matter to the NLRB for further proceedings. 796 F.2d at 19–20. On remand the NLRB ruled that Browne had violated sections 8(a)(1) & (3) of the NLRA, 29 U.S.C. §§ 158(a)(1) & (3), by conditioning Bailey's offer to employ Nevins on his accepting sub-union scale wages and benefits. *Donald Browne d/b/a Bailey Distributors*, 283 N.L.R.B. 647, 648 (1987).

**2.** Although Browne did not testify, he apparently had no knowledge of Nevins' lack of a valid New York State driver's license until the first day of the back pay hearing, when Nevins disclosed this information on cross-examination. And while Nevins' testimony regarding his driving record was sketchy at best, Bailey's request for an adjournment to explore this "newly revealed" information was denied. Thereafter, albeit without the aid of Nevins' Abstract of Operating Record, the parties stipulated to certain aspects of the suspension and revocation of Nevins' license. Upon receipt of the Abstract from the New York State Department of Motor Vehicles, Bailey then filed a Motion for Reconsideration with the NLRB pursuant to 29 C.F.R. § 102.48(d). The motion was denied by letter, dated June 16, 1989, on the ground that the case was pending before this Court.

Before this suspension was lifted, Nevins' license was again suspended on March 29, 1983. On May 13, 1987, Nevins was issued a Class 5 license, which authorized only the operation of passenger vehicles and small commercial trucks. *See id.* § 501 2(e) (McKinney 1986). This license was revoked on June 23, 1987 for operating a vehicle without insurance. After surrender of his license on November 30, 1987, Nevins obtained a Class 5 "restricted use license" on December 21, 1987 pursuant to N.Y.Veh. & Traf.Law § 530 (McKinney Supp.1989), which provides, in pertinent part, that "[a] person whose driving license ... has been ... suspended or revoked ... and for whom the holding of a valid license is a necessary incident to his employment ... may be issued a restricted use license." This license was suspended on November 11, 1988, but reinstated on January 10, 1989. Thus, during the period between June 12, 1982 and January 10, 1989 Nevins drove legally for approximately twelve months—*i.e.,* from May 13, 1987 to June 23, 1987 and from December 21, 1987 to November 9, 1988.

On January 29, 1988, the ALJ ruled, *inter alia,* that although Nevins was discriminatorily denied hire as a "driver's helper," he was entitled to back pay calculated at a "driver's" commission rate from February 15, 1981 forward, since he would have been promoted to a driver's position by that date. Furthermore, the ALJ rejected Bailey's contention that Nevins' lack of a valid Class 1 driver's license from June 16, 1982 forward, mandated that his back pay be calculated at the driver's helper rate. Finally, the ALJ concluded that Browne's April 27, 1987 offer of reinstatement did not toll Bailey's back pay liability, as the offer had been improperly tainted by threatening statements made by Browne to Nevins on May 7, 1987—four days prior to Nevins' written acceptance of the offer. On February 14, 1989, the NLRB affirmed the ALJ's rulings and issued a Second Supplemental Order awarding Nevins $171,912, plus interest, in back pay and the restoration of certain pension benefits. The Board presently seeks enforcement of its Second Supplemental Order.

## DISCUSSION

In resisting enforcement of the NLRB's Second Supplemental Order, Bailey contends that (1) the NLRB erroneously concluded that Nevins' back pay should be calculated at the "driver's" rate for the period of time that his driver's license was suspended or revoked; and (2) the NLRB erroneously concluded that Browne's April 27, 1987 offer of reinstatement, "which was unconditionally accepted by Nevins," did not toll the Company's back pay liability.

### A. *Standard of Review*

Section 10(c) of the NLRA, 29 U.S.C. § 160(c), provides, in pertinent part:

> If ... the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue ... an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter.

29 U.S.C. § 160(c). In fashioning a particular remedy pursuant to section 10(c) the NLRB is given broad discretion, *Detroit Edison Co. v. NLRB,* 440 U.S. 301, 316, 99 S.Ct. 1123, 1131, 59 L.Ed.2d 333 (1979), and its remedial choice is subject to limited judicial scrutiny. *Shepard v. NLRB,* 459 U.S. 344, 349, 103 S.Ct. 665, 669, 74 L.Ed.2d 523 (1983); *NLRB v. Local 3, Int'l Brotherhood of Elec. Workers,* 730 F.2d 870, 879 (2d Cir.1984); *Teamsters Local 115 v. NLRB,* 640 F.2d 392, 399 (D.C.Cir.), *cert. denied,* 454 U.S. 827, 102 S.Ct. 119, 70 L.Ed.2d 102 (1981). On review, this choice will not be disturbed " 'unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.' " *Fibreboard Paper Prods. Corp. v. NLRB,* 379 U.S. 203, 216, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964) (quoting

*Virginia Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943)); *see also Bagel Bakers Council of Greater New York v. NLRB*, 555 F.2d 304, 305 (2d Cir.1977) (per curiam) (remedial choice can be reversed "only if . . . the method chosen was so irrational as to amount to an abuse of discretion"). Underlying factual findings of the NLRB will be conclusive if they are supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(e); *see also Local 3*, 730 F.2d at 876.

## B. *The Merits*

### 1. *Back Pay Calculation*

■ The Board based Nevins' back pay calculation on the earnings of three Bailey employees who had been hired as "driver's helpers" and subsequently promoted to "drivers." The ALJ's finding that "had Nevins been employed as a helper by Browne [on January 5, 1981] . . . he would have [eventually] become the driver of the fourth truck route" is adequately supported by substantial evidence. Our review therefore focuses on the Board's method of calculating Nevins' back pay *after* he became entitled to a "driver's" position. Bailey argues that since a Class 1 license was functionally necessary for Nevins' employment as a "driver," back pay should not have been calculated at the "driver's" commission rate during the period of time that Nevins was "legally prohibited from operating the Company's trucks." We agree.

While the NLRB's discretion in formulating remedial orders necessarily extends to determining the appropriate method of back pay calculation, *see Bagel Bakers Council*, 555 F.2d at 305, the Board is required to adopt a formula that will yield a "close approximation[ ]" of the amount due. *NLRB v. Brown & Root, Inc.*, 311 F.2d 447, 452 (8th Cir.1963). Furthermore, it is well settled that the General Counsel for the NLRB must establish the "gross amount of back pay due," before the burden shifts to the employer to "establish facts which would negative the existence of liability . . . or which would mitigate that liability." *Id.* at 454; *accord NLRB v.*

*Overseas Motors, Inc.*, 818 F.2d 517, 521 (6th Cir.1987); *Florence Printing Co. v. NLRB*, 376 F.2d 216, 223 (4th Cir.), *cert. denied*, 389 U.S. 840, 88 S.Ct. 68, 19 L.Ed.2d 104 (1967); *NLRB v. Miami Coca–Cola Bottling Co.*, 360 F.2d 569, 576 (5th Cir.1966).

In ruling that the General Counsel had carried this burden and adequately established Bailey's back pay liability, the ALJ found that "Nevins could have driven [Bailey's] trucks legally by the act of paying any outstanding fines. Nevins could have been issued a restricted license as a 'matter of mere routine' and his failure to pay his fines when he did not need a driver's license does not operate to bar him from his entitlement to backpay." The NLRB affirmed these rulings, noting simply that "Nevins was qualified for the job." After reviewing the record, we are unable to conclude that these findings are supported by substantial evidence.

Although the method by which the Board calculated the amount of Nevins' back pay might have been appropriate if Nevins had legally retained his Class 1 license throughout the six and one-half year period in question, the choice was an irrational one in light of Nevins' self-imposed legal disability to serve as a driver of Bailey's delivery trucks from June 16, 1982 forward. Between the June 16, 1982 suspension of his purported Class 1 license and the May 13, 1987 issuance of a Class 5 license, Nevins voluntarily forfeited his New York State driving privileges by refusing to pay his outstanding summonses. Only subsequent to the June 23, 1987 revocation of his Class 5 license did Nevins become eligible for a section 530 restricted use license. *See* N.Y.Comp.Codes R. & Regs. tit. 15, § 135.7(8) (1987). However, contrary to the ALJ's conclusion that a Class 1 restricted license would have been issued as a "matter of mere routine," section 530 provides, in pertinent part, that "[t]he issuance of a restricted use license . . . shall be in the *discretion* of the commissioner of motor vehicles." N.Y.Veh. & Traf.Law § 530(1) (emphasis added). Furthermore, a restricted license "shall be denied to any

person ... [who] has had a series of convictions, incidents and/or accidents ..., which in the judgment of the commissioner ... tends to establish that the person would be an unusual and immediate risk upon the highways." N.Y.Comp.Codes R. & Regs. tit. 15, § 135.7(9). The only record evidence to inferentially support the ALJ's conclusions regarding Nevins' eligibility for a Class 1 license is the erroneous stipulation that on November 30, 1987, the first day of the back pay hearing, Nevins secured a Class 5 restricted use license by paying his outstanding summonses. In point of fact, Nevins did not obtain a Class 5 restricted use license until December 21, 1987—nearly three weeks after the termination of the back pay hearing. No evidence was proffered by the General Counsel to indicate that had Nevins applied for a Class 1 license, as opposed to a Class 5 license, one would have been routinely issued.

Under the circumstances, we are unable to conclude that the Board's underlying factual findings are supported by substantial evidence considered on the record as a whole. During the six and one-half year back pay period in question, Nevins held only Class 5 and Class 5 restricted use licenses, which were valid from May 13, 1987 to June 23, 1987 and from December 21, 1987 forward (excepting a two month suspension from November 11, 1988 to January 10, 1989), respectively. During the remainder of the six and one-half year back pay period Nevins was legally prohibited from operating *any* motor vehicle. Consequently, we conclude that the method chosen to calculate Nevins' back pay—*i.e.,* basing the award on a "driver's" commission rate—amounted to an abuse of the Board's discretion. A more rational formula, and one that we sanction, would base Nevins' back pay award on a "driver's" rate only for the time that he held a valid Class 1 license and on a "driver's helper" rate for the remainder of the back pay period in question.

Finally, we note that the NLRB's " 'power to order affirmative relief under § 10(c) is merely incidental to the primary purpose of Congress to stop and to prevent unfair labor practices. Congress did not establish a general scheme authorizing the Board to award full compensatory damages for injuries caused by wrongful conduct.' " *Shepard,* 459 U.S. at 352, 103 S.Ct. at 670 (quoting *International Union, United Automobile, Aircraft and Agricultural Implement Workers v. Russell,* 356 U.S. 634, 642–43, 78 S.Ct. 932, 937–38, 2 L.Ed.2d 1030 (1958)). Thus, while a back pay award is "necessitated by the employer's wrongful conduct," *Bagel Bakers Council,* 555 F.2d at 305, its purpose is to effectuate national labor policies by making the aggrieved employee whole, and *not* to reward a discriminatee for being a scofflaw. By disregarding his legal obligations to promptly pay his traffic summonses and to insure his vehicle, Nevins voluntarily forfeited his New York State driving privileges and, consequently, his right to be compensated at the "driver's" commission rate.

## 2. *Offer of Employment*

■ Bailey contends that Browne's April 27, 1987 offer to employ Nevins as a "helper" tolled the Company's back pay liability. However, based on Nevins' uncontested testimony, the ALJ found that the validity of the offer was undermined by a May 7, 1987 telephone conversation in which Browne told Nevins that: "[Y]ou don't want to come back to work here. Some things have surfaced about you.... A lot of accidents happen around here. You don't want to come back to work here." After reviewing the record, we conclude that the Board's finding of invalidity is amply supported by substantial evidence. Furthermore, Bailey's argument that the NLRB is estopped from contesting the validity of the reinstatement offer because Nevins "unconditionally" accepted it on May 11, 1987—four days after the improper statements were made—is without merit, as the Company never complied with the Board's First Supplemental Order.

It is well settled that a remedial offer of reinstatement must be firm, clear and unconditional. *Canova v. NLRB,* 708 F.2d 1498, 1505 (9th Cir.1983); *Oil, Chemical*

*and Atomic Workers Int'l Union v. NLRB,* 547 F.2d 598, 601 n. 3 (D.C.Cir. 1976), *cert. denied,* 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1977). The offer must also be made in good faith. *NLRB v. Rice Lake Creamery Co.,* 365 F.2d 888, 894 (D.C.Cir.1966); *NLRB v. Interurban Gas Co.,* 354 F.2d 76, 78 (6th Cir.1965); *Lakeland Bus Lines, Inc. v. NLRB,* 278 F.2d 888, 892 (3d Cir.1960). Moreover, under recent decisions of the NLRB, the acceptance of an invalid reinstatement offer does not toll the back pay period. *See IMCO/Int'l Measurement & Control Co.,* 277 N.L.R.B. 962, 962 (1985); *Sumco Mfg. Co.,* 267 N.L.R.B. 253, 258 (1983), *enforced,* 746 F.2d 1189 (6th Cir.1984) (per curiam), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2323, 85 L.Ed.2d 842 (1985).

Based on the record, we are unable to conclude that Browne's offer of reinstatement, as was mandated by the Board's First Supplemental Order, was made in good faith. Whatever validity the April 27 letter to Nevins may initially have had as a remedial offer of employment, the offer was arguably undermined to the point of indirect revocation by Browne's threatening statements of May 7, 1987, which are undenied on the record. *See* 1 S. Williston, *A Treatise on the Law of Contracts* § 55, at 178 (3d ed. 1957) (Any statement that "clearly implies unwillingness to contract according to the terms of the offer" may act as a revocation.). At a minimum, Browne's statements made it clear that Nevins' return was unwanted and were undoubtedly designed to deter his acceptance. As such, the threats so tainted the offer that it appears questionable at best, whether Nevins' reinstatement was ever intended. We therefore reject Bailey's contention that Nevins' acceptance of the tainted reinstatement offer tolled the Company's back pay liability.

## CONCLUSION

Because a Class 1 license was functionally necessary for Nevins' employment as a "driver," the Board abused its discretion by basing Nevins' back pay award on a "driver's" commission rate during the period when he was legally prohibited from operating Bailey's delivery trucks. The petition of the Board for enforcement of its Second Supplemental Order is denied and the cause is remanded for recalculation of Bailey's back pay liability in accordance with this opinion.

KEARSE, Circuit Judge, dissenting:

I respectfully dissent.

The initial violation of §§ 8(a)(1) and (3) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(a)(1) and (3) (1982), by respondent Donald Browne d/b/a Bailey Distributors ("Browne") is no longer in dispute. Further, the majority sustains, expressly or implicitly, the findings of the National Labor Relations Board ("Board") that Browne, though ordered by the Board to offer Timothy Nevins reinstatement, made a bad-faith offer of reinstatement, and that, in the absence of these violations, Nevins would have been promoted to the position of driver. Given these circumstances, I cannot agree with the majority that, simply because Nevins's driver's license was suspended or revoked during most of the period in question, the Board's award of backpay to Nevins at the driver's rate for the entire period was an abuse of discretion.

The mere fact that Nevins did not have a license during most of the backpay period is not a material circumstance under the labor laws. The majority's premise, *i.e.,* that reinstatement of a driver's license was not automatic but lay within the discretion of the state's commissioner of motor vehicles and hence Nevins might not have been able to drive Browne's vehicles, does not give proper deference to the Board. Since reinstatement of the license was a matter of the state official's discretion, it cannot be said with any degree of assurance that Nevins could not have gotten it back immediately upon application. There was no evidence that Nevins tried to get his license renewed and was denied. Rather, the evidence was that in lieu of the job he would have had in the absence of Browne's violations, Nevins worked as, *inter alia,* a carpenter and did not need to

drive. And Nevins did thereafter obtain a license of the type he needed, when he needed it. The Board concluded that any uncertainty as to whether Nevins would have been able during the backpay period to get relicensed to drive vehicles of the type used by Browne should be resolved against Browne, who had discriminated against Nevins in violation of the labor laws in the first instance and made a bad-faith offer of reinstatement thereafter. This plainly was not an abuse of the Board's discretion. *See Kawasaki Motors Manufacturing Corp. v. NLRB*, 850 F.2d 524, 531 (9th Cir.1988); *NLRB v. Miami Coca–Cola Bottling Co.*, 360 F.2d 569, 572–73 (5th Cir.1966).

The Board was entitled to conclude that since Nevins did not need a driver's license in his substitute jobs, his failure to have such a license did not warrant forfeiture of his right to backpay at the rate applicable to the position he would have held had Browne not violated the NLRA. Though none of us countenances Nevins's traffic derelictions or his failure to pay summonses, it was not the responsibility of the Board to enforce the state traffic laws, and I cannot agree with the majority's conclusion that the manner in which the Board chose to enforce the labor laws was an abuse of discretion. I would enforce the Board's supplemental order.