**GOLAY & CO., Inc., Petitioner,**

v.

**NATIONAL LABOR RELATIONS, BOARD, Respondent.**

**INTERNATIONAL UNION OF UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW–AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Nos. 15540, 15656.**

United States Court of Appeals Seventh Circuit.

Dec. 1, 1966.

Rehearing Denied Feb. 6, 1967.

Rehearing Denied Feb. 6, 1967 en banc.

**260**

William E. Roberts, Robert A. Lichtenauer, Indianapolis, Ind., for Golay & Co., Inc., Roberts & Ryder, Indianapolis, Ind., of counsel.

Joseph L. Rauh, Jr., John Silard, and Harriett R. Taylor, Stephen I. Schlossberg, Washington, D. C., for UAW-AFL-CIO, Lynnville G. Miles, Daniel F. Cummings, Indianapolis, Ind., of counsel.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Frank H. Itkin, Atty., N.L.R.B.,

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Allison W. Brown, Jr., Atty., N.L.R.B., for the National Labor Relations Board.

Before HASTINGS, Chief Judge, and KILEY and CUMMINGS, Circuit Judges.

KILEY, Circuit Judge.

In Appeal No. 15540, Golay & Company petitions this court to review and set aside an order of the Board finding it guilty of unfair labor-practices in violation of sections 8(a) (1) and (3). In Appeal No. 15656 the Union [1] petitions for a modification of the Board's order with respect to the date from which back pay was due unlawfully discharged employees. We granted leave to the Union to intervene in No. 15540 and to Golay to intervene in No. 15656, and consolidated the appeals. In each appeal the Board cross-petitions for enforcement. We order enforcement of the order with certain alterations in the decision and order.

### No. 15540

Golay's four plants are located in Cambridge City, Indiana. During the period September through November 20, 1962, the Union conducted an organizational drive among Golay's approximately 350 employees. During this drive employees James, Heaston, Moistner, Covalt and Paris were laid off or discharged. Paris was discharged the morning of November 19, and during the lunch hour his fellow employees decided to strike in protest of the discharges. The next morning the strikers picketed the plant. Golay discharged thirty-four of the employees who participated in the strike and later refused to rehire eight other strikers who had not been discharged.

On November 1, 1962, the Union filed three charges, with subsequent amendments, involving alleged unfair labor practices in layoffs, discharges or terminations of employees in three of the plants. Upon these charges the General

1. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW–AFL–CIO.

Counsel issued a consolidated complaint alleging Golay's violation of sections 8 (a) (1) and (3). Hearings were conducted from April 8 to April 24, 1963. The Trial Examiner concluded that Golay had violated 8(a) (1) during the organizational period by surveillance of Union activities, by interrogating and threatening employees, by promising or granting benefits, by attempting to form a company union and by interfering with employees' rights to wear union insignia. He also concluded that the discharges of James and Paris were discriminatory in violation of 8(a) (3) and (1) but that the layoffs or discharges of Covalt, Heaston and Moistner were not discriminatory.

The Board adopted the findings and conclusions of the Examiner so far as he found violations by Golay. It disagreed with the Examiner's finding that Golay's discharges of Heaston and Moistner [2] were not 8(a) (3) and (1) violations. Golay argues that the findings and conclusions of interference and coercion in violation of 8(a) (1) and of discriminatory discharges (of James, Paris, Heaston and Moistner) in violation of 8(a) (3) and (1) are not supported by substantial evidence on the record as a whole.

We have read both the order and decision. We adopt the Board's decision against Golay with respect to these contentions as the decision of this court. We see no necessity of repeating here the discussion in the Board's decision of the Intermediate Report and Recommended Order of the Examiner, both of which are reported at 156 N.L.R.B. No. 123 (Feb. 4, 1966). The Board did not reject or set aside any credibility determinations of the Examiner. Under the limited scope of this court's jurisdiction to review Board orders we find substantial evidence in the record as a whole to justify the Board's decision and order. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

We turn now to the question of the discharges and refusals to rehire the forty-two strikers. The Trial Examiner found that the strike was precipitated by the discharge of Paris and was an unfair labor practice strike. He concluded that Golay violated 8(a) (3) and (1) because nineteen of the thirty-four post-strike discharges were unlawful, but that of these nineteen employees, only eight were entitled to reinstatement. He found that misconduct by the other eleven, subsequent to their discharge, barred their reinstatement under section 10(c). He concluded that Golay had committed further 8(a) (3) and (1) violations by refusing to rehire the eight strikers who had not been discharged.

The conduct upon which the Examiner predicated his conclusions that fifteen of the discharges were lawful and that eleven of those unlawfully discharged were not entitled to reinstatement consisted of "loitering" or wandering around the Golay plant during the afternoon of November 19, punching in at the time clock with no intention of returning to work, failing to respond to Golay's reasonable inquiries as to whether they would or would not work, and misconduct during picketing for one and one-half to two hours on the morning of November 20. He also found that one employee had carried a hammer around with him on the afternoon of the strike.

The Board disagreed with the Trial Examiner and found that all of the discharges on November 19 were in violation of 8(a) (3) and (1). It found that the conduct relied upon by the Examiner as cause for discharge was "not unprotected." It concluded that all forty-two employees were entitled to reinstatement under section 10(c).

Golay contends that the November 19 "sitdown" strike and the "mass picketing" on November 20 were unlawful, unprotected activities, that the discharges of the employees involved in those activities did not violate 8(a) (3) and (1), and that these employees are not entitled to reinstatement under section 10(c).

2. The Board and Trial Examiner agreed that Covalt's layoff was not discriminatory.

■ At least nineteen of the strikers did not participate in the alleged misconduct, at least until after their discharge. Since there is substantial evidence on the record as a whole to support findings of 8(a) (3) and (1) violations for the discharge of these nineteen strikers, we need not and do not decide whether the other discharges constituted similar violations or whether the alleged misconduct was protected. The findings with respect to the nineteen are ample to support the Board's order that Golay refrain from further discriminatory conduct. To the extent that the Board found the alleged misconduct to be protected and concluded that Golay had committed 8(a) (3) and (1) violations by discharging the other employees, we do not adopt its opinion or enforce its order.

The only question remaining is whether the strikers' alleged misconduct on November 19 and 20 bars an order of reinstatement for all forty-two employees under section 10(c).

■ The Golay employees "loitered" or wandered about for only one and one-half to two hours and committed no acts of violence. The alleged "sitdown" interfered with production no more than a simple cessation of work by these employees would have. In our opinion the November 19 strike did not come within the term "sitdown" strike used by the Supreme Court to describe the strike in N L R B v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L. Ed. 627 (1939), where the employees seized and retained possession of the employer's plant for nine days "without shadow of legal right." Id. at 252, 59 S. Ct. 490. Nor did the Golay strike amount to "seizure of control" as in NLRB v. Clinchfield Coal Corp., 145 F.2d 66, 72, 155 A.L.R. 874 (4th Cir. 1944), where striking mine workers blocked mine entrances and prevented mining operations for more than a day.

On November 20 the Golay pickets, numbering from fifteen to seventy at various times, walked in a circle at the driveway to the company parking lot. At times they were so close together as to prevent cars from entering the lot, but some employees crossed the picket line on foot after parking outside. The Trial Examiner found that one employee crossing the line had been struck by an object, and that one other employee was threatened several times. The alleged objectionable conduct lasted for no more than two hours, from 5:30 to 7:30 a. m., and there was no evidence that any employee desiring to enter was prevented from doing so. The picketing was not similar to that in W. T. Rawleigh Co. v. NLRB, 190 F.2d 832 (7th Cir. 1951), cited to the argument, where this court vacated a Board order of reinstatement. In *Rawleigh*, delivery and shipment of property was impeded, and nonstriking employees were unable to enter the plant for more than a month because of the "breast to back" picketing technique and were repelled by physical force if they attempted to enter. Id. at 840.

■ Whether or not the November 19 and 20 conduct was protected under section 7, we think the Board was justified in ordering reinstatement of the employees involved. Section 10(c) provides that the Board has power to order reinstatement as a remedy for employer unfair labor practices if the order will effectuate the policies of the Taft-Hartley Act and if the employees to be reinstated were not discharged "for cause." As the court said in NLRB v. Thayer Co., 213 F.2d 748, 753 n.6 (1st Cir.), cert. denied, 348 U.S. 883, 75 S.Ct. 123, 99 L.Ed. 694 (1954):

[A] determination that an employee is not engaged in a § 7 activity does not necessarily mean that, if he is discharged for his participation in the unprotected action, the discharge is "for cause." That depends on the surrounding circumstances. What is *cause* in one situation may not be in another. (Italics in original.)

The November 19 strike was triggered by the discharge of employee Paris after other discriminatory discharges and coercive conduct. The strike and the picketing were caused by Golay's "massive" unfair labor practices. Balancing the

strikers' conduct against Golay's, NLRB v. Thayer Co., 213 F.2d at 753, we agree with the Board that the "misconduct was not of such a serious nature in the total circumstances of this case as to warrant denial of their reinstatement."

### No. 15656

The Board ordered reinstatement of the forty-two employees discharged or refused reinstatement because of the strike and picketing and ordered Golay to make them. whole for loss of wages commencing March 25, 1963, when it received a letter signed by the employees seeking reinstatement.[3] The Union contends that the loss of wages should be measured from November 19, 1962, when it insists the employees were entitled to be reinstated.

■ The Union's contention rests in part upon the statement made by a Union representative to a Golay official on the afternoon of the strike that "you are able to settle this in a very few minutes * * * and return the people to their jobs." We see no merit in this contention. We think the Board properly found that this statement was not an unconditional offer by the employees to return to work. The obligation to reinstate arose upon receipt of the unequivocal request signed by the employees, which was the first authoritative, unequivocal request made to Golay.

■■ The Union also claims that unlawfully discharged employees are not required to ask for reinstatement and that participation in an unfair labor practice strike does not necessarily defeat the right to back pay. We agree. But in fashioning remedies for unfair labor practices, the Board has discretion under section 10(c) to order reinstatement with or without back pay "as will effectuate the policies" of the Act under the circumstances of a particular case. Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 198–199, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); Bon Hennings Logging Co. v. NLRB, 308

F.2d 548, 555–558 (9th Cir. 1962). We see no abuse of discretion in the Board's choice of dates with respect to back pay.

The Board's order will be enforced, as modified.

---

3. The Board found that five of the forty-two had made earlier unconditional offers to return and that five others did likewise on dates not fixed by the record. The Board ordered computation of back pay for them from those dates, leaving for compliance the determination of the dates with respect to the latter five.