395 F.2d 611
 129 U.S.App.D.C. 388
 Lewis E. ELAM, Jr., et al., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, A. H. Belo
Corporation, Intervenor.
A. H. BELO CORPORATION, Petitioner, NATIONAL LABOR RELATIONS
BOARD, Respondent, Lewis E. Elam, Jr., et al., Intervenors.
 Nos. 21047, 21176.
 United States Court of Appeals District of Columbia Circuit.
 Argued Feb. 9, 1968.
Decided April 8, 1968, As Amended May 21, 1968, Petition for
Rehearing Denied May 21, 1968.
 
 Mr. L. N. D. Wells, Jr., Dallas, Tex., with whom Mr. George Kaufmann, Washington, D.C., was on the brief, for petitioners in No. 21,047 and intervenors in No. 21,176.
 Mr. Larry Lesh, Dallas, Tex., of the bar of the Supreme Court of Texas, pro hac vice, by special leave of court, with whom Mr. Warren Woods and Mrs. Betty Southard Murphy, Washington, D.C., were on the brief, for petitioners in No. 21,176 and intervenor in No. 21,047, Mr. Gerhard P. VanArkel, Washington, D.C., also entered an appearance for intervenor in No. 21,176.
 Mr. Eugene B. Granof, Attorney, N.L.R.B., of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Warren M. Davison, Attorney, N.L.R.B., were on the brief, for respondent.
 Before DANAHER, TAMM and LEVENTHAL, Circuit Judges.
 PER CURIAM:
 
 
 1
 The National Labor Relations Board found that on May 7, 1966 A. H. Belo Corporation (Company) acted in violation of 8(a)(1) of the National Labor Relations Act[1] when it discharged the 'extra boys' working in the mailroom of the Company's newspaper, the Dallas Morning News, and refused to reinstate them. The conclusion of illegality is based on the finding that the discharge and denial of reinstatement were in reprisal for the acts of the young men (referred to as 'boys' by the Board and parties and hence by us) in having engaged in a concerted work stoppage in protest against the terms and conditions of their employment and against the Company's refusal to discuss the safety and other matters involved with their informally appointed representative.
 
 
 2
 The Board ordered the Company to cease and desist from the conduct found to be unlawful and from interfering with its employees' rights under 7 in any other manner, to post the customary notice, and to offer to the employees unlawfully discharged reinstatement to the same or equivalent jobs, with backpay to run from 10:30 p.m. on May 7, 1966.
 
 
 3
 The order is before this court on the petitions to review filed by the boys (in No. 21047), and the Compnay (in No. 21176), and the Board's cross-petition for enforcement of its order.
 
 
 4
 On the central question we find there is substantial evidence, related in considerable detail in the Board's decision,[2] supporting the Board's finding and order.
 
 
 5
 Unrepresented employees who spontaneously refuse to work, thereby protesting grievances concerning working conditions, are engaged in concerted conduct for 'mutual aid and protection' that is protected by 7 of the Act.[3] Hence such work stoppages are not available to the employer as occasion for invoking the right recognized in 10(e) to discharge employees for 'cause.'The Company's position is that the boys 'quit,' and that quitting is unprotected activity. It suffices, in rejecting this contention, to say that there is substantial evidence that the boys did not voluntarily quit their employment, but rather walked off their jobs for the purpose of presenting demands and grievances. In their discussion with Mr. Wilson, the mailroom superintendent, they presented grievances, including, in addition to pay matter, their demand for safety devices on the mailroom machinery. Several boys had been injured. Elam and Frost recently had parts of their fingers cut off by a machine. They felt that the long hours they worked, often from 11 a.m. one day to 2 a.m. the next, increased the danger of accidents. The Company says that the injuries reflected horseplay or carelessness. But as the Examiner and Board pointed out, whatever the cause there had been injuries. Certainly the demand for safety shields warranted consideration.
 
 
 6
 All the boys got from Mr. Wilson, however, was a promise to talk to Mr. Blum 'and see what I can do in the next three or four weeks.' When the boys said they wanted something more definite than that and sooner, Mr. Wilson falsely stated he didn't know how to contact Mr. Blum. Mr. Wilson declined the offer of one of the boys, Melton, to pay for Wilson's call to Blum and declined permission for Melton himself to phone Blum. When Melton asked if he could 'give us something more definite,' Wilson replied: 'Well, no, I can't. Maybe in the next three or four weeks * * *. Now you all can either get back to work or get out.'
 
 
 7
 The boys withdrew from work at this point and assembled to continue to discuss their grievances and act in concert thereon. Later they sought to return to their jobs. There is substantial evidence that the Company wrongfully treated the action of the boys in walking off their jobs and refusing to abandon their protected activity as constituting 'ipso facto a termination of their status as employees.' Collins Baking Co. v. NLRB, 193 F.2d 483, 486 (5th Cir. 1951). The Company treated them as though they had quit, rather than as economic strikers, told them they did not work for the Company any longer, removed their names from the list of mailroom employees to be called on for special mailings, and late that evening denied them reinstatement when they attempted to return to work. Thus the Company discharged them, and this was contrary to the act. NLRB v. Cowles Publishing Co., 214 F.2d 708 (9th Cir.), cert. denied, 348 U.S. 876, 75 S.Ct. 110, 99 L.Ed. 689 (1954).
 
 
 8
 There is further evidence that the discharge was in reprisal for this protected activity. The Company's contention that the boys were subject to discharge because they congregated in the Company's parking lot in violation of orders to disperse is not available on appeal since the Company did not raise the misconduct issue before the Board. Presumably that is why the Compnay brief is unable to cite any evidence that this was the reason for the discharge-- a void which also precludes reversal on this ground.
 
 
 9
 The culmination of the discharge was found to have come when the Company denied reinstatement late May 7. The Compnay claims that by this time the boys had been replaced. It had the burden of proof on this issue. Its evidence shows that it made provisional arrangements to maintain operations, including use of the Boy Scouts. But the record supports the Board's conclusion that the Company failed to show that it had arranged permanent replacements until after the boys were denied reinstatement.
 
 
 10
 The petitioners in No. 21047 complain that the Board erred in failing to adopt the bargaining order recommended by the Examiner. The Board has wide discretion in fashioning a suitable remedy.[4] Here, as the Board pointed out, the Company had not been charged with unlawful refusal to bargain, and hence material matters relating to a bargaining order had not been litigated. The Board was not compelled to assume that if a bargaining duty arose the Company would fail to honor it. The Board ordered, in addition to reinstatement with backpay,[5] cessation of conduct found unlawful. Its failure to order bargaining was not an abuse of discretion.[6]
 
 
 11
 The petitions to review are denied. The Board's cross-petition for enforcement of its order is granted.
 
 
 12
 So ordered.
 
 
 
 [1]
 29 U.S.C. 151 et seq. (1967)
 
 
 [2]
 The decision and order of the Board, including that of the Examiner insofar as adopted by the Board, are reported at 165 NLRB No. 8 (1967)
 
 
 [3]
 NLRB v. Washington Aluminum Co., 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962)
 
 
 [4]
 NLRB v. Firbreboard Paper Products Co., 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964)
 
 
 [5]
 Since the denial of reinstatement at 10:30 p.m. on May 7 was the culmination of the evidence on discharge, the use of that time for computation of backpay is plainly not unreasonable. Golay & Co. v. NLRB, 371 F.2d 259, 263 (7th Cir. 1966), cert. denied, 387 U.S. 944, 87 S.Ct. 2079, 18 L.Ed.2d 1332 (1967)
 
 
 [6]
 See United Steelworkers of America, AFL-CIO (Ronoke Iron & Bridge Works) v. NLRB, 129 U.S.App.D.C. , 390 F.2d 849 (Nos. 20336, 20514, December 27, 1967)