NATIONAL LABOR RELATIONS BOARD
v. TUPELO GARMENT CO.

No. 9087.

Circuit Court of Appeals, Fifth Circuit.

Sept. 9, 1941.

Rehearing Denied Oct. 13, 1941.

Robert B. Watts, Gen. Counsel, Malcolm F. Halliday, Asst. Gen. Counsel, Gerhard P. Van Arkel and Winthrop A. Johns, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

Guy Mitchell, Jr., of Tupelo, Miss., and W. C. Sweat, of Corinth, Miss., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

National Labor Relations Board filed this proceeding alleging, on information and belief, that Tupelo Garment Co., Mid-South Manufacturing Co., Fulton Manufacturing Co., Booneville Manufacturing Co., R. F. Reed and W. B. Fields had violated a judgment of this court, entered by consent on April 13, 1939, in a proceeding wherein the Board was complainant and Tupelo Garment Co. was respondent. The decree was against Tupelo Garment Co., its officers, agents, successors and assigns. The other parties above named were not parties to the suit. It contained the usual cease and desist provisions, not material in this case, and provided in paragraph two for immediate payment of various sums of money to 14 employees of Tupelo Garment Co. in amounts ranging from $35 to $150, a total of $1,610. Paragraph three of the decree provides:

"Should the respondent or its successor or successors, receivers, trustees, or other legal representatives resume or begin operations at any of the respondent's plants in Tupelo, New Albany, Booneville, Fulton or Baldwyn, Mississippi, it or they shall take the following affirmative action to effectuate the policies of the National Labor Relations Act [29 U.S.C.A. § 151 et seq.]:

"(a) Offer to each of the employees in paragraph 2(a) above immediate and full reinstatement or employment to their former or substantially equivalent positions without prejudice to any right and any privileges previously enjoyed or accruing to them.

"(b) Immediately post and keep visible on each bulletin board and in other prominent places throughout the plant or plants where operations are so resumed, or begun, for a period of thirty (30) days, notices that the respondent, its successor or successors, receivers, trustees, or other legal representatives shall cease and desist as provided in paragraph 1(a) through (2) above, and shall take the affirmative action provided in paragraph 2(a) through (b) above, or that it has, in compliance with this stipulation, already taken the affirmative action provided in paragraph 2(a) through (b) above, and shall take the additional affirmative action provided in paragraph 3(a) above."

The prayer was that on the return of a rule to show cause respondents named be adjudged in contempt of this court and be ordered to purge themselves of contempt by complying with the provisions of Section 3 of the decree and the named employees be made whole for losses in pay

sustained because of the violations of Section 3(a) of said decree.

█ Respondents, except Tupelo Garment Co., moved to dismiss the complaint and filed a joint answer. Tupelo Garment Co. did not appear. The case was submitted upon the pleadings, supporting affidavits, briefs and arguments of counsel. No evidence was taken. Of course, if the facts well pleaded in the petition show a case of contempt and are not denied, judgment may be entered thereon. The following facts substantially appear from the petition.

Tupelo Garment Co., a Delaware corporation, was engaged in the manufacture of work shirts, which were sold in interstate commerce, at its plants in Tupelo, Fulton, Booneville, New Albany and Baldwyn, Mississippi. Complaint was made against the company of unfair labor practices, and while it was pending, the Board and the company entered into a stipulation that the consent decree above outlined be entered. Prior to the execution of the stipulation, Tupelo Garment Co., by action of its board of directors and stockholders, was voluntarily dissolved, on September 30, 1938. Its Delaware charter was surrendered and a certificate of dissolution issued by the Secretary of State of Delaware was put of record in Mississippi on October 15, 1938. The Baldwyn plant was dismantled and the equipment of the New Albany plant was sold to persons not made parties to this contempt proceeding. The other equipment was disposed of to the Tupelo Realty Co., a corporation owning the building in which the Tupelo plant was located, the realty company paying for it in stock which was distributed to the stockholders of the garment company as a liquidating dividend. Respondents, Reed and Fields, were respectively president and vice-president of the Tupelo Garment Co. As individuals they purchased the equipment sold to the Realty Co. and interested themselves in the formation of the Mid-South Manufacturing Co., located at Tupelo, Fulton Manufacturing Co., located at Fulton and Booneville Manufacturing Co., located at Booneville. These companies were incorporated in December, 1938, under the laws of Mississippi, with the same stockholders, and R. F. Reed and W. B. Fields became president and vice-president of them. Some, but not all, of the stockholders of the Tupelo Garment Co. were stockholders of the three new corporations and some, but not all, of the directors of the Tupelo Garment Co. became officers or directors of the new corporation. They began to operate in January, 1939, and engaged in substantially the same business as had Tupelo Garment Co.

The petition further alleges that all the books, records and files of Tupelo Garment Co. were turned over to Mid-South Manufacturing Co. and as late as November 1940 the name Tupelo Garment Co. remained in conspicuous lettering on the building of the Mid-South Manufacturing Co. The trailer trucks of the Tupelo Garment Co., which passed to the Mid-South Co., continued to be operated with Tupelo Garment Co. as the only firm name on them and they were used as late as November 1940. The postoffice box in the postoffice at Tupelo continued to be rented by Tupelo Garment Co. up to and including December 31, 1938, after which it was transferred to the Mid-South Manufacturing Co. Mail addressed to Tupelo Garment Co. continued to be put in the box. The Board, before filing this petition, requested Mid-South Manufacturing Co., Fulton Manufacturing Co. and Booneville Manufacturing Co. to permit examination of the records of the Tupelo Garment Co. and of the other three companies, which request was refused.

The answer alleges the equipment of the plants was sold to the Realty Co. only after unsuccessful efforts to sell the plants as going concerns or the equipment to the public. The answer shows more fully the details of the acquisition of equipment of the plants and alleges that not all the plant equipment was used, that some of it was discarded and all that was retained had to be gone over and repaired and new equipment was added. It also alleges the corporations were organized because the business men of the three towns were interested in retaining the plants for the purpose of giving employment to their citizens and they largely took part in the organization of the new companies.

The answer denies that any of the new corporations was the successor of Tupelo Garment Co. and further alleges that the books and records of Tupelo Garment Co. were not turned over to the new corporations but were stored in one room of the building occupied by Mid-South Manufacturing Co. in Tupelo; that the postoffice box was the only large box in the postoffice available; that only one trailer truck with the name Tupelo Garment Co. on it was used and that for only a short time as it

was old and discarded; that in addition to the name Tupelo Garment Co. on the building, which was rented from the owner by Mid-South Manufacturing Co., the name Mid-South Manufacturing Co. also appeared. The petition does not allege there was any connection between Tupelo Realty Co. and Tupelo Garment Co. other than that of landlord and tenant.

The theory of the Board is that the three new corporations were successors of Tupelo Garment Co. and Reed and Fields were in a position to require them to comply with the decree. The case presents only questions of fact. A judgment holding the respondents in contempt would have to be supported by clear and convincing evidence but not necessarily proof beyond reasonable doubt. Evidence merely creating suspicion would not be sufficient. The allegations as to the turning over of the books and records, the name on the building and the truck and the renting of the postoffice box have no probative force to show the new corporations were successors of Tupelo Garment Co. Clearly, they do not exclude other reasonable conclusions.

It is evident that there is a close connection between Mid-South Manufacturing Co., Fulton Manufacturing Co. and Booneville Manufacturing Co. But the facts alleged in the petition, putting aside the denials of the answer, which are not rebutted, fail to show any connection between them and Tupelo Garment Co. Since it is not charged that the amounts awarded to the fourteen employees by Section 2 of the decree were not paid we assume that Tupelo Garment Co. made the payments.

The stockholders of Tupelo Garment Co. had the absolute right to dissolve their corporation and the Board was without authority to prevent this. They also had the right to form the new corporations, to purchase the equipment, which was on the market, and for which it may be presumed they paid in money and not in stock, as the petition does not allege otherwise, and to elect any persons they chose as their officers.

We conclude that with its dissolution the Tupelo Garment Co. ceased to exist. The incorporation of the other three companies was not a reorganization of Tupelo Garment Co. They were separate and independent of Tupelo Garment Co. and not in any sense its successors. Extended argument and citation of authorities are unnecessary to support these conclusions. Cases dealing with dissimilar facts are not in point.

The petition is dismissed.