## NATIONAL LABOR RELATIONS BOARD v. STANDARD TROUSER CO.

### No. 4919.

Circuit Court of Appeals, Fourth Circuit.

July 17, 1947.

---

Reeves R. Hilton, of Washington, D. C. (Gerhard P. Van Arkel, Gen. Counsel, Morris P. Glushien, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Dominick L. Manoli, all of Washington, D. C., on the brief), for petitioner.

Whiteford S. Blakeney, of Charlotte, N. C. (Guthrie, Pierce & Blakeney, of Charlotte, N. C., on the brief), for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

The National Labor Relations Board (hereinafter called the Board) in June, 1946, filed a petition in this Court, asking that the Standard Trouser Company, (hereinafter called Standard), and certain of its officers and agents, be adjudged in contempt of a decree of this Court entered March 9, 1942. This decree directed that

"Standard Trouser Company, Buckhannon, West Virginia, its officers, agents, successors, and assigns, shall cease and desist from:

"(a) In any manner interfering with, restraining, or coercing its employees in the exercise of their right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection."

The Board's petition to adjudge Standard, its officers and agents in contempt alleges that they have violated the injunction contained in the decree by (1) making statements and threats tending to discourage employees from membership and activity in the Amalgamated Clothing Workers of America, C. I. O. (hereinafter called the Amalgamated); (2) refusing to meet with the Amalgamated, as representative of Standard's employees, or to permit the superintendent of their plant to do so, for the purpose of discussing grievances; (3) unilaterally granting concessions to the employees without first advising or conferring with the Amalgamated as representative of the employees; (4) refusing to bargain collectively in good faith with the Amalgamated as the duly certified and exclusive representative of Standard's employees; and (5) discriminatorily laying off and/or discharging five employees because of their activity in promoting the Amalgamated.

Standard filed an answer, also a motion to dismiss. We overruled the motion to dismiss and referred the matter to the Honorable Haymond Maxwell, Senior, as Special Master, to "hear relevant evidence on the issues of fact raised by the petition and the answer as to whether the respondents, or any of them, have wilfully violated the decree of this court entered in this cause on March 9, 1942, and to report the evidence to this court with his findings of fact and conclusions of law."

The Special Master conducted an elaborate hearing at Buckhannon, West Virginia, at which he heard the testimony of witnesses produced by the Board and Standard. Briefs were filed by the parties. After due consideration, the Special Master filed an extended report, concluding:

"Upon consideration of all that appears above herein, the Special Master is of opinion that the respondents are not shown to have violated the injunction of March 9, 1942; therefore,

"The Special Master recommends that this Honorable Court exonerate the respondents of the contempt which has been charged against them by the petitioner."

Thereupon, the Board filed exceptions to the Special Master's report and moved us to set the report aside, while Standard moved that the report be confirmed. We think the motion of the Board must be denied and that the motion of Standard must be granted.

■ Three principles of law, quite important here, should be noted at the outset. (1) A showing of contempt requires something more than a mere preponderance of evidence; a rather heavy burden rests upon the party urging contempt, and clear and convincing proof is necessary. Oriel v. Russell, 278 U.S. 358, 364, 49 S.Ct. 173, 73 L.Ed. 419; Kansas City Power & Light Co. v. National Labor Relations Board, 8 Cir., 137 F.2d 77, 79; National Labor Relations Board v. Tupelo Garment Co., 5 Cir., 122 F.2d 603, 606. (2) The findings of a Special Master should be set aside by a court only if these findings are clearly erroneous. Federal Rules of Civil Procedure, rule 53(e) (2), 28 U.S.C.A. following section 723c; Polish National Alliance v. National Labor Relations Board, 7 Cir., 159 F. 2d 38. (3) The Special Master, who saw and heard the witnesses and could observe their demeanor while testifying, is in a better position than a court to pass on the credibility of witnesses. Wallace Corporation v. National Labor Relations Board, 4 Cir., 159 F.2d 952, 954; National Labor Relations Board v. Arcade-Sunshine Co., 76 U.S.App.D.C., 312, 132 F.2d 8.

In the light of these principles, we discuss very briefly the findings of the Special Master on the five points set out in the petition of the Board.

### 1. Threats and Statements of Standard's Officers Tending to Discourage Membership in Amalgamated.

■ There was here, as in almost every aspect of the instant case, conflicting testimony. The Special Master reviewed every incident set out by the Board, particularly the statements alleged to have been made by the Lerners, and Plant Superintendents, Walker and Stevenson. We cannot properly interfere because the Special Master, as to these statements, in the main believed the witnesses whose testimony was on the side of Standard rather than the witnesses who favored the Board. A detailed review of this testimony would serve no useful purpose. The evidence found by the Special Master to be credible is ample warrant for his finding that there were no threats or statements by the officials of Standard which might reasonably be construed as a wilful violation of our decree.

### 2. Refusal of Standard's Officials to Meet With Amalgamated Representative to Discuss Grievances.

■ Supervisory officials of Standard did refuse to meet with grievance committees of Amalgamated; but, in every instance, these representatives of Amalgamated were told that these matters would be handled directly by L. P. Lerner, President of Standard. Instructions to this effect were given by Lerner to all the plant superintendents. Lerner did not live at Buckhannon but he made frequent and periodic visits to the factory and communication with him was fraught with no difficulty. The record fails to disclose any attempts, without success, of Amalgamated's grievance committee to deal with Lerner. Surely, if Lerner wished to handle these grievances himself, in order that Standard's labor policy might be consistent, this cannot, on any reasonable theory, be construed as a violation of the decree entered by us.

### 3. Unilaterally Granting Concessions by Standard to Employees Without Conferring With Amalgamated.

The Board charged Standard with unilaterally announcing to its employees and

putting into effect (without credit to Amalgamated) certain raises in minimum wages and vacation and insurance benefits. The bottom falls completely out of this charge by virtue of the fact that before these benefits were announced by Standard, President Lerner of Standard did confer with representatives of Amalgamated, looking to a joint announcement by Standard and Amalgamated, of the wage increases. Amalgamated's representatives stated to President Lerner that Amalgamated did not need credit for this and that Amalgamated would not go along with Standard here unless Standard would sign a contract containing a clause providing for maintenance of membership in Amalgamated. Standard has consistently refused, as is its right, to agree to such a clause.

 Certain concessions involving insurance and vacation pay were, as stated above, unilaterally announced. As to this, it appears that no offer was made immediately prior to the announcement. It is unmistakably clear, however, that this would have been a futile gesture at that time, in view of the unalterable policy of Amalgamated, vigorously and repeatedly expressed, that it would join in nothing without a contract containing a maintenance of membership clause. Contempt of court is indeed a very grave thing and we are not disposed to make strained and extreme construction of May Department Stores Co. v. N.L.R.B., 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145, in order to spell out some theoretical and abstract violation of the court's order, with facts such as are before us.

### 4. Standard's Refusal to Bargain Collectively With Amalgamated.

 The Board attempts to make much of the charge that Standard wilfully refused to bargain collectively with Amalgamated as the certified bargaining agent of Standard's employees. The Special Master, in deciding this point against the Board, reviewed in detail the various conferences between Standard and Amalgamated in an effort to agree upon a contract. One of these conferences was held in June, 1943, (very shortly after the certification of Amalgamated), another in July, 1943, and still another in August, 1943. The real substance here, as the Special Master found, was that the negotiations between Standard and Amalgamated broke down by virtue of Amalgamated's rigid insistence upon a clause providing for either a closed shop, union shop, or at least a provision for maintenance of union membership, while Standard, with equal rigidity, steadfastly refused (as was again its right) to agree to such a contractual provision. So here, once more, we must go along with the Special Master.

### 5. Discriminatory Discharge of Employees by Standard for Activity in Amalgamated.

 In the latter part of 1944, Standard discharged five employees, all of whom had been very active in the affairs of Amalgamated. The Board insists these discharges were due to their activities in Amalgamated; Standard counters with the allegation that all of the discharges were prompted by other and satisfactory reasons (chiefly low production records) quite apart from union activity. Here there were acute conflicts of testimony. The Special Master reviewed each of the five cases, carefully weighed all the evidence and reached the conclusion that not one of the discharges was prompted by union affiliation and activity but each was based upon a satisfactory ground, which had no relation to the Union. The Special Master, too, pointed out that "other employees who were active in bringing the Union into the plant and maintaining it there" had been retained in the employ of Standard, with no efforts by Standard to discharge them. So, on this point as on the other points, we must confirm the Special Master.

We deem it unnecessary to pass on other questions raised by the Board and Standard.

The exceptions of the Board to the report of the Special Master are overruled and Standard's motion to dismiss this proceeding is granted.

Proceeding dismissed.