NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LANEY & DUKE STORAGE WAREHOUSE CO., Inc. and Laney & Duke Terminal Warehouse Co., Inc., Respondent.

No. 22963.

United States Court of Appeals, Fifth Circuit.

April 7, 1970.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Marcus W. Sisk, Charles N. Steele, Attys., N.L.R.B., Washington, D. C., for petitioner.

O. R. T. Bowden, David A. Bartholf, Charles F. Henley, Jr., Jacksonville, Fla., for respondent.

Before PHILLIPS\*, BELL, and SIMP-SON, Circuit Judges.

BELL, Circuit Judge:

The National Labor Relations Board petitioned this court to adjudge the company in civil contempt for alleged disobedience of a decree entered by this court on January 3, 1967. NLRB v. Laney & Duke Storage Warehouse Co., Inc., 369 F.2d 859. That decree, enforcing a Board order, directed the company, *inter alia,* to cease and desist from (1) committing acts of reprisal against pro-union employees and promising increased benefits to employees for anti-union purposes; (2) refusing to bargain collectively with the union, and (3) interfering in any other manner with employee's rights under § 7 of the Act. The order further directed the company, upon request, to meet with the United Steel Workers and bargain collectively with the union as the exclusive representative of the employees in the bargaining unit.

The main thrust of the Board's case for contempt is its assertion that the company refused to bargain in good faith. Instead, it is alleged, the company engaged in surface motions of bargaining with the intent of causing negotiations to fail. In addition, it is urged that the company threatened to deny vested pension rights to strikers who might be replaced in an economic strike.

This court referred the contempt petition, after answer, to a special master who conducted full evidentiary hearings. The master answered each of the Board's charges in his report through findings and conclusions and recommended that the court deny the petition for contempt. We conclude that the master's recommendation should be followed.

There is no dispute as to the master's findings of fact. It is the conclusion drawn by the master from those facts that the Board has put in issue.

The exceptions to the report fall generally into five categories. First, it is contended that the master considered the various facts supporting the claim of bad faith in bargaining separately rather than considering the conduct on a totality basis. The determination of good faith bargaining is to be made by drawing inferences from the conduct of the parties as a whole. NLRB v. Insurance Agents' Intern. Union, 1960, 361 U.S. 477, 498, 80 S.Ct. 419, 4 L.Ed.2d 454. The master expressly applied this test and stated that he rested his conclusion upon the company's overall conduct. This exception is without merit.

Secondly, the Board excepts to the master's conclusion that a speech, delivered by a company official soon after the court's decree, threatening to withhold vested pension plan benefits from

employees who might engage in an economic strike and are "replaced and fired", although violating § 8(a) (1), did not itself warrant a contempt adjudication. The master decided this was a "single isolated unfair labor practice which occurred prior to and away from the bargaining table and was sufficiently separated as to not destroy the otherwise good faith bargaining." We agree with this conclusion when the event is weighed in light of the otherwise good faith bargaining, to be discussed infra, and in view of the fact that the occurrence took place over a month before the first bargaining session.

■ Thirdly, the Board contends that the company unswervingly insisted on retaining unilateral control over working conditions and, therefore, did not bargain in good faith. Throughout the negotiations the company did insist on a strong management rights clause as well as nostrike and noncompulsory arbitration clauses. The master, however, found that the company made major concessions relating to employment conditions. Those included alterations in seniority, proposal of some selective wage increases, agreement to revocable check-off, six holidays, compulsory arbitration for discharged employees with vested pensions rights, and arbitration for medical examination conflicts. Furthermore, the company placed in the record seven collective bargaining contracts containing virtually the same types of management rights proposals that the Board now contends the company could not in good faith have expected a union to accept. We agree that the Board did not establish an unalterable demand by the company for unilateral control of employment conditions so as to constitute a refusal to bargain in good faith. Cf. NLRB v. American Aggregate Company, 5 Cir., 1964, 335 F.2d 253.

■■ One difficulty with the Board's position is that it must meet a heavier burden of proof than in the ordinary unfair practice case. In a contempt proceeding the charges that the company has violated the decree must be established by clear and convincing proof. NLRB v. Tupelo Garment Company, 5 Cir., 1941, 122 F.2d 603, 606; NLRB v. Spartanburg Sportswear Company, 4 Cir., 1960, 278 F.2d 312; NLRB v. Standard Trouser Co., 4 Cir., 1947, 162 F.2d 1012, 1014. We cannot hold that the proof here of bad faith bargaining was clear and convincing.

■ The Board next contests the master's finding that there had been sufficient opportunity to bargain with respect to wages so as to justify a unilateral increase in wages by the company. See NLRB v. Katz, 1962, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230. After unsuccessful general wage negotiations, the company offered a specific wage increase to the union. The union responded by seeking to make the increase retroactive. The company then countered with an offer of a still higher increase. When the union insisted that the second higher wage offer be retroactive, the company instituted the increase unilaterally. An impasse need not be reached to justify a wage increase. NLRB v. Tex-Tan, Inc., 5 Cir., 1963, 318 F.2d 472, 481. We agree with the master that inasmuch as the wage increase was undertaken after prior notice and consultation with the union, it did not constitute a violation of the Act or decree. A. H. Belo Corp. v. NLRB, 5 Cir., 1969, 411 F.2d 959, 970–971.

Finally the Board complains of the master's conclusion that "standing alone and unaccompanied by an absolute termination of all negotiations, the Company's refusal to bargain with respect to the discharge of certain employees while charges were pending with the Board does not constitute a *per se* violation of § 8(a) (5). At best such action must be considered in the overall context of the Company's behavior and is merely one factor to be considered in determining the Company's state of mind."

■ During the bargaining period, the company terminated certain employees for alleged theft, including two men who had been members of the union bargaining committee. The union filed

charges with the Board, claiming that these employees had been discharged because of their union activities. While the charges were pending, and before they were dismissed by the Board, the union requested a grievance meeting concerning reinstatement of six of the eight discharged employees. The company responded by stating that it would not discuss a grievance matter which was the subject of a pending charge before the Board. More than a month later, the union insisted that the employees be reinstated. The company again took the position that it had no legal duty to bargain concerning a matter which was the subject of a charge pending before the Board. The master agreed with the company that this refusal to bargain did not constitute a violation of § 8(a) (5). On this point the master erred although we do conclude that the violation did not rise, considered alone or in totality with all of the facts of record, to the level of civil contempt.

We have held that the filing of unfair labor charges by a union does not relieve an employer of its obligation to bargain. Skyline Homes, Inc. v. NLRB, 5 Cir., 1963, 323 F.2d 642; NLRB v. Taormina, 5 Cir., 1953, 207 F.2d 251. Those cases involved a total refusal by the employers to bargain. In the instant case the company refused to bargain only with respect to the discharges. This seems to be the distinction relied upon by the master but the distinction is unsound.

Such a position is contrary to the purpose of the Act to promote the settlement of labor disputes through collective bargaining. The union is not required to elect between the right to bargain concerning a particular dispute and the right to file charges with the Board. Both avenues to redress of grievances are available to the union under the Act. The company cannot condition the assertion of one right by the union on the forfeiture of another. Thus we find that the company had a duty under § 8(a) (5) to bargain collectively with respect to the discharged employees. Moreover, it is no answer to say that these men were no longer employees. Just as strikers retain their employee status, NLRB v. Knight Morley Corp., 6 Cir., 1957, 251 F.2d 753, 760, employees discharged for allegedly discriminatory reasons also are entitled to representation at the bargaining table.

Nevertheless, as stated, we do not find that this violation is a sufficient basis for a civil contempt adjudication. What washes out of the long contempt proceeding is this violation and the violation stemming from the statement regarding economic strikers and vested pension rights. These violations are minuscule when considered in the context of the thrust of the charges—a refusal to bargain concerning an entire labor-management agreement. The proof falls short of a willful and deliberate contempt of our decree in the bargaining process. Cf. NLRB v. Athens Mfg. Co., 5 Cir., 1947, 163 F.2d 255, on the willful and deliberate standard. The negotiations for the agreement covered many topics and resulted in much progress before an impasse was reached.

Petition denied.