**GOLAY & CO., Inc., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 18666.**

United States Court of Appeals, Seventh Circuit.

July 28, 1971.

---

D. Reed Scism, William E. Roberts, Indianapolis, Ind., for Golay & Co., Inc., petitioner; Roberts & Ryder, Indianapolis, Ind., of counsel.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Marvin Roth, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Allison W. Brown, Jr., Attys., National Labor Relations Board, Washington, D. C., for respondent.

Before HASTINGS, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

This is the second time this proceeding has been before the court. In Nos. 15540 and 15656, Golay & Co. v. NLRB, 371 F.2d 259 (7th Cir. 1966), cert. denied, 387 U.S. 944, 87 S.Ct. 2079, 18 L.Ed.2d 1332, we enforced the Board's order with respect to Section 8(a) (3) and (1) violations of the National Labor Relations Act, 29 U.S.C. § 151, et seq., by respondent (Company) covering 19 of 42 employees. We did not adopt the Board's opinion or enforce its order with respect to 23 other employees whom the Board found, contrary to the Examiner's finding, were also discharged in violation of 8(a) (3) and (1), but we did approve the reinstatement of these employees under NLRB v. Thayer Co., 213 F.2d 748 (1st Cir. 1954), cert. denied, 348 U.S. 883, 75 S.Ct. 123, 99 L.Ed. 694. We enforced the order as modified and remanded for further proceedings. The Supplemental Decision and Order now before us followed, awarding to the reinstated employees $158,700.74 back pay. The Company has petitioned for review and the Board has cross-petitioned for enforcement. The Supplemental Decision and Order will be enforced.

During the lunch period on November 19, 1962, a group of employees agreed to,

and did, punch in and refuse to work until a fellow employee Paris, unlawfully discharged that morning, was reinstated. Thereafter, 34 employees were discharged by the Company for refusing to work. The next morning, November 20, a picket line formed. As a result of alleged "misconduct" involving the picket line, the Company refused to rehire 8 other strikers when they offered to return to work. The unfair labor practice complaint followed.

The Trial Examiner's original decision was that 19 of the 34 discharges on November 19 violated Sections 8(a) (3) and (1) since the protest strike was protected activity, but that the remaining 15 were lawfully discharged for in-plant misconduct prior to their discharge that afternoon. He also found that 11 of the 19 unlawfully discharged employees were guilty of post-discharge misconduct on the same day and that these 11 were not entitled to reinstatement. The Trial Examiner further found that 8 other employees who were discharged for picketing on the morning of November 20 were entitled to reinstatement, since either they were not involved in any misconduct on the picket line or their misconduct was condoned.

The Board, however, found that all 42 employees were wrongfully discharged or refused reinstatement in violation of 8(a) (3) (1) and were entitled to back pay. The Board alternatively concluded that, assuming the strikers' conduct to be unprotected, it "was not of such serious nature in the total circumstances of this case to warrant de-

nial of their reinstatement" when measured against the Company's "massive unfair labor practices." Our earlier opinion followed. We decided that 19 employees did not participate in the in-plant misconduct November 19 until after they were discharged and that this fact justifies the Board order finding an 8(a) (3) and (1) violation. As to the remaining 23 employees, we applied the balancing rule of NLRB v. Thayer Co., 213 F.2d 748 (1st Cir. 1954), cert. denied, 348 U.S. 883,[1] 75 S.Ct. 123, 99 L.Ed. 694, and found in agreement with the Board that their misconduct, measured against the "massive" Company unfair labor practices, was no bar to reinstatement. Our enforcement of the order as "modified" and the Supplemental Order now before us followed.

I.

The main issue presented to us is whether back pay should have been tolled from the time of the Trial Examiner's decision to the Board's decision for the 23 employees [2] whom the Examiner had found were not entitled to reinstatement and whose discharge was not found unlawful by this court.

The Company relies for its argument that back pay should have been tolled upon the Board's supplemental decision and order in Kohler Co., 148 N.L.R.B. 1434 (1964), enf'd, 120 U.S.App.D.C. 259, 345 F.2d 748 (1965), and Ferrell-Hicks Chevrolet, Inc., 160 N.L.R.B. 1692 (1966). The Company does not now challenge the reinstatement of the 42 employees. They have long since been

---

1. "Thayer holds that where an employer who has committed unfair labor practices discharges employees for unprotected acts of misconduct, the Board must consider both the seriousness of the employer's unlawful acts and the seriousness of the employees' misconduct in determining whether reinstatement would effectuate the policies of the Act." Local 833, UAW–AFL–CIO v. NLRB, 112 U.S.App.D.C. 107, 300 F.2d 699, 702–703 (1962), cert. denied, Kohler Co. v. Local 833, UAW–AFL–CIO, 370 U.S. 911, 82 S.Ct. 1258, 8 L.Ed. 2d 405.

2. The Company argues that the back pay of the 23 employees whose reinstatement we ordered—without considering whether their discharge (or failure to be rehired) was an 8(a) (3) and (1) violation—should be tolled from the time of the favorable decision by the Trial Examiner and the overruling of that decision by the Board. However, the Examiner ordered the reinstatement of the 8 employees who were not rehired because of their November 20 conduct, and therefore there was no decision favorable to the Company with respect to these employees.

reinstated. It challenges only the failure of the Board on remand to apply the tolling principle in awarding back pay.

We deem it necessary to discuss only the decision in Ferrell-Hicks in rejecting the challenge. There the Company claimed error in the Board's failure to toll employee Burinskas' back pay between the Board's decision favoring the Company and the court of appeals' (sub nom Burinskas v. NLRB, 123 U.S. App.D.C. 143, 357 F.2d 822 (1966)) eventual enforcement of the Board's supplemental decision adverse to the Company. The court of appeals in enforcing the Board's supplemental decision discussed at length the Board's varying practices and the lack of clarity in its decisions with respect to the tolling question: Before A. P. W. Products Co., Inc., 137 N.L.R.B. 25 (1962), enf'd, 316 F.2d 899 (2nd Cir. 1963), back pay was tolled for the period from the issuance of the Examiner's decision favorable to the Company to the Board's decision reversing that determination; not tolled at all thereafter until Walls Mfg. Co., Inc., 137 N.L.R.B. 1317 (1962), enf'd, 116 U.S. App.D.C. 140, 321 F.2d 753 (1963); and finally tolled only in "unique" or "unusual" cases under Kohler Co., *supra*. The court remanded to the Board for development of "at least minimal" standards for the Board's exercise of discretion.[3]

The standards the Board set on remand are: (1) In 8(a) (3) cases, after determination of fact by the final reviewing authority that an employer has discharged an employee with the unlawful intent of discouraging union activities, there are no equitable considerations available to the employer "wrongdoer"—even if he has relied on an earlier favorable decision to refuse reinstatement—to justify withholding the discriminatee's pay and there is no tolling of back pay. (2) In cases of other unlawful labor practices of an employer, where there is no unlawful intent which "so compellingly fixes the equity" in favor of the discriminatee as in 8(a) (3) cases, the Board will consider "any special factors" which render full back pay inappropriate to effectuate the policies of the Act. Ferrell-Hicks Chevrolet, Inc., *supra* at 1694 ff.

■ The fact that in our earlier decision we did not expressly adopt the Board's order that the discharges of the 23 employees were Section 8(a) (3) and (1) violations does not per se compel tolling their back pay under the *Ferrell-Hicks* guidelines. The misconduct for which they were discharged and denied reinstatement was "triggered" by "massive" unfair labor practices. Even if their discharges were without an unlawful intent, the Board has, under Section 10(c) of the Act, "broad discretion" in fashioning the remedy for an employer's unfair labor practices, NLRB v. Thayer Co., *supra*, 213 F.2d at 753; *see* Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 215–216, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964), and no "special factors" are urged by the Company as to why it would be inequitable to burden it with the financial consequences of its unlawful practices in order to restore the status quo ante, *see* NLRB v. Rutter-Rex Mfg. Co., 396 U.S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969).

In *Kohler* the Board initially denied reinstatement of the strikers because of unprotected acts of misconduct on their part and because there was no unlawful intent on the part of the employer. The court of appeals set aside the Board's denial of reinstatement because of its failure to apply the *Thayer* doctrine. On remand the Board reinstated all of the strikers, but decided in its discretion, under the special circumstances of the case, Kohler should not be burdened with the back pay liability for the period be-

3. The Board was also directed to determine whether Burinskas' back pay should be tolled. Upon remand the Board did not toll Burinskas' back pay because it had been "ultimately found" that Ferrell-Hicks had unlawfully discharged him and had discouraged union activity among its employees.

fore the court of appeals decision. The special factor in *Kohler* was that the employer was not fully advised of the law concerning his refusal to reinstate the strikers until the court of appeals decision, since the Board had not accepted the *Thayer* principle as applicable to the case. Under its discretionary power the Board justified tolling the Kohler strikers' back pay.

But the Company here has not shown that it could reasonably have expected the Board would approve the Examiner's findings and conclusions as to the 23 by "adhering to a particular view of the law," since the Examiner, Board and the court applied *Thayer* throughout this proceeding. And the equities between the Company and the employees did not "draw close * * * to equilibrium" [4] since the employees' misconduct was triggered by the employer's "massive" unfair labor practices.

## II.

■ There is no merit in the Company's contention that the Board erroneously used the "quarterly computation method" [5] in determining net back pay due to the 42 employees. The quarterly computation method was established in F. W. Woolworth, 90 N.L.R.B. 289 (1950), for that case and future cases and was approved by the Supreme Court in NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953); it is the "usual formula" for the computation of net back pay. NLRB

v. Rutter-Rex Mfg. Co., 396 U.S. 258, 261, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969). Use of the formula in this case is not "oppressive" nor "not calculated to affect the policy of the Act." NLRB v. Seven-Up Bottling Co., *supra*, 344 U.S. at 349, 73 S.Ct. at 290.[6] The Company has shown no special circumstances, such as operation of a business where earnings fluctuate according to season, to justify a different method of computation.

■ During the back pay period the Company gave three wage increases [7] to employees in the 500 Department where the 42 employees before us had worked. The Company argues—but has not persuaded us—that the awards erroneously included these increases.

Evidence was introduced as to the general requirements for receipt of the pay increase, but no evidence was introduced as to which of the 42 employees who were discharged would have received the increase had they been working at the time. The Board held that the General Counsel having included the wage increase in the back pay allegation, the Company was obligated to plead with specificity, and prove, that the individual claimants would not have merited the increase. Since no evidence was introduced on this point, the Board held for the General Counsel and ordered that the wage increases be included in the back pay award.

We think the Board properly decided—contrary to the ruling of the Examiner—that the General Counsel did not have the

---

4. Ferrell-Hicks Chevrolet, Inc., 160 N.L.R.B. 1692, 1698 (1966).

5. The quarterly periods begin the first day of January, April, July and August. The net loss of pay is determined for each quarter or portion thereof and the earnings for one quarter are to have no effect on the liability for any other quarter. NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 345, 73 S.Ct. 287, 97 L.Ed. 377 (1953).

6. The mere fact of the two and a half year delay between the Examiner's decision

and that of the Board does not per se justify blaming the delay on the Board. This court has, absent a showing otherwise, placed the blame on the "unfortunate but inevitable" delay in the procedures under the Act. NLRB v. Kostel Corp., 440 F.2d 347, 353 (7th Cir. 1971). *See also* New Alaska Development Corp. v. NLRB, 441 F.2d 491 (7th Cir. 1971).

7. One increase was given to 80 of 100 employees, the second to 51 of 146 employees, and the third to 52 of 105 employees, all without limitation to classification or grade.

burden of proof to establish these facts mitigating the employer's liability. See Marlene Industries Corp. v. NLRB, 440 F.2d 673, 674 (6th Cir. 1971). The information upon which qualifications for the raises were made was peculiarly in the possession of the Company, and the Company was responsible for the 42 employees losing the opportunity to qualify for the increase. See NLRB v. Miami Coca-Cola Bottling Co., 360 F.2d 569, 572–573 (5th Cir. 1966).

■ The Board decided—contrary to the Examiner—that employees Frady, Harrison and Jamieson made reasonably diligent searches for employment in the back pay period. We are not persuaded that this decision was erroneous. The test is not whether an employee worked in the period or what he earned, per se, but whether in mitigation of his loss of earnings he made an "honest good faith effort." NLRB v. Cashman Auto Co., 223 F.2d 832, 836 (1st Cir. 1955).

■ The record furnishes a substantial basis for the Board's conclusions that each of the three made a reasonably diligent effort to obtain employment on his own and by registration at Indiana State Employment Security Division. Frady was told that the agency could not refer him because the Company discharged him for misconduct. Jamieson and Harrison also registered, without success. We think the Board could find that the employees' discharges for misconduct were substantial barriers to their success in mitigating their loss of pay. Furthermore, these employees, each of whom was in his fifties when the Trial Examiner made his decision and lacked a high school education, applied for jobs at various businesses in the area. Two of them—Frady and Jamieson—eventually obtained full-time employment, and the third, Harrison, held various part-time jobs throughout the period. We see no abuse of discretion in finding that they were reasonably diligent in seeking employment in the back pay period. See Marlene Industries Corp. v. NLRB, supra, at 674.

■ We also think the Board's treatment of employee Tyree is justified by the record. Before his discharge Tyree worked evenings as part-time employee of an oil company for a seven-week period. In the back pay period he became a full-time oil company employee, left that oil company for another as a full-time employee, returned to work full-time for the first company, left again to operate a gas station under a franchise, later formed a partnership in a service station—a venture which failed —and resumed operation of a service station until reinstated under the Board's order. The Board excluded from earnings, in determining his net back pay award, one-fourth of his full-time employment with the first oil company, as a continuation of his pre-discharge part-time employment. We think that the Board's determination was not unreasonable under the circumstances.

■ Finally, the Board could properly decline to deduct from back pay benefits employees received from their union in the relevant period, since the employees furnished no services, such as picketing, in exchange for the union payments. Florence Printing Co. v. NLRB, 376 F.2d 216, 219–220 (4th Cir. 1967), cert. denied, 389 U.S. 840, 88 S.Ct. 68, 19 L.Ed2d 104; NLRB v. Rice Lake Creamery Co., 124 U.S.App.D.C. 355, 365 F.2d 888, 893 (1966).

The Supplemental Decision and Order will be enforced.